UNITED STATES, Appellee

v.

Marco A. BUSH, Private First Class
U.S. Marine Corps, Appellant

No. 09-0119

Crim. App. No. 200700137

United States Court of Appeals for the Armed Forces

Argued April 28, 2009

Decided August 17, 2009

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.  RYAN, J., filed a separate
opinion concurring in the judgment, in which STUCKY, J., joined.

Counsel


For Appellant:  Lieutenant Commander Thomas P. Belsky, JAGC, USN
(argued); Major Christian J. Broadston, USMC, and Major Anthony
W. Burgos, USMC (on brief).

For Appellee:  Lieutenant Commander Paul D. Bunge, JAGC, USN
(argued); Brian K. Keller, Esq. (on brief).

Military Judges:  F. A. Delzompo and J. F. Havranek


**This opinion is subject to revision before final publication.**

United States v. Bush, 09-0119/MC

Judge ERDMANN delivered the opinion of the court.

Before the United States Navy-Marine Corps Court of Criminal Appeals, Private Marco A. Bush asserted that his due process right to a speedy post-trial review was violated by a delay of more than seven years from the court-martial to docketing at the Court of Criminal Appeals. Bush claimed that he suffered specific prejudice in that he was denied an identified job because he did not have his discharge papers (DD Form 214). In support of his claim, Bush provided his unsworn declaration without any corroborating evidence.

Citing our opinion in United States v. Allende, 66 M.J. 142 (C.A.A.F. 2008), the lower court determined en banc that Bush failed to adequately substantiate his claim of prejudice. United States v. Bush (Bush CCA II), 67 M.J. 508, 510-12 (N-M. Ct. Crim. App. 2008). Nevertheless, concluding that "the delay in the post-trial review of this case 'is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system,'" the lower court held that Bush's due process right to speedy post-trial review had been violated. Id. at 512 (quoting United States v. Toohey, 63 M.J. 353, 362 (C.A.A.F. 2006)). The Court of Criminal Appeals went on to conclude that the Government had met its burden to show that the post-trial error was harmless beyond a reasonable doubt and denied relief. Id. at 513. In

2

doing so, the lower court stated that "appellant's failure to independently corroborate his assertion of specific employment prejudice or alternatively to provide facts explaining his inability to provide such independent corroboration weighs heavily on our decision." Id. We granted review to determine whether Allende conflicts with this court's long-standing decision in United States v. Ginn, 47 M.J. 236 (C.A.A.F. 1997), and also to determine whether the Court of Criminal Appeals wrongfully imposed upon Bush the burden to establish that the constitutional error was harmful.[1]

We see no conflict between Allende and Ginn, as applied by the Court of Criminal Appeals in this case or otherwise. We further conclude that to the extent that the Court of Criminal Appeals erred in placing a burden of production on Bush, that error was harmless beyond a reasonable doubt. We therefore affirm the decision of the Court of Criminal Appeals.

---

[1] We granted review of two issues:

> I. WHETHER THE COURT OF CRIMINAL APPEALS' INTERPRETATION AND APPLICATION OF THIS COURT'S DECISION IN UNITED STATES v. ALLENDE, 66 M.J. 142 (C.A.A.F. 2008) PLACES IT AT ODDS WITH THIS COURT'S DECISION IN UNITED STATES v. GINN, 47 M.J. 236 (C.A.A.F. 1997).
>
> II. WHETHER THE COURT OF CRIMINAL APPEALS MISINTERPRETED ALLENDE, CREATING THE PRACTICAL RESULT OF SHIFTING TO AN APPELLANT THE BURDEN OF PROVING THAT A CONSTITUTIONAL ERROR WAS HARMFUL.

67 M.J. 268 (C.A.A.F. 2009).

PROCEDURAL BACKGROUND

Consistent with his pleas, Bush was convicted of numerous offenses under the Uniform Code of Military Justice (UCMJ).[2] He was sentenced to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to pay grade E-1. His sentence was adjudged by a military judge sitting alone as a general court-martial on January 5, 2000. The convening authority took action on November 16, 2000.

The case was docketed with the United States Navy-Marine Corps Court of Criminal Appeals on February 13, 2007 -- over six years later. On July 25, 2007, the Court of Criminal Appeals determined that the convening authority's action was ambiguous and ordered that the case be returned to the Judge Advocate General of the Navy for submission to an appropriate convening authority for proper post-trial processing in compliance with Rules for Court-Martial 1105-1107. The case was then to be returned to the Court of Criminal Appeals for completion of its review under Article 66, UCMJ, 10 U.S.C. § 866 (2000).

---

[2] Bush entered guilty pleas and was convicted of one specification of attempting to escape from custody, one specification of failure to obey a lawful order, one specification of fleeing apprehension, one specification of resisting apprehension, two specifications of reckless driving, two specifications of assault with a dangerous weapon, and one specification of striking a superior noncommissioned officer, in violation of Articles 80, 92, 95, 111, and 128, UCMJ, 10 U.S.C. §§ 880, 892, 895, 911, 928 (2000).

The convening authority took action on November 27, 2007, approving the sentence as adjudged. Pursuant to a pretrial agreement, the convening authority suspended confinement in excess of twenty-four months for a period of six months from the date of his action.[3] He also deferred adjudged and automatic forfeitures in the amount of $500.00 pay per month until the date of action. Adjudged forfeitures and automatic forfeitures in the amount of $500.00 pay per month were waived for six months for the benefit of Bush's dependent. The case was returned to the Court of Criminal Appeals, which considered Bush's sole assignment of error -- unreasonable post-trial processing delay.

The Court of Criminal Appeals issued its first opinion in this case on March 11, 2008. United States v. Bush (Bush CCA I), 66 M.J. 541 (N-M. Ct. Crim. App. 2008). Using the four-factor analysis for resolving post-trial delay claims, the lower court concluded that Bush's due process right to speedy post-trial review was violated. Id. at 542-44[4]; see United States v. Moreno, 63 M.J. 129, 135-41 (C.A.A.F. 2006).

---

[3] The convening authority's initial action on November 16, 2000, also complied with the pretrial agreement. There is no allegation, nor any indication from the record, that the post-trial delay resulted in any period of wrongful incarceration.

[4] The lower court applied the factors identified in Barker v. Wingo, 407 U.S. 514 (1972), to assess: (1) the length of the delay; (2) the reasons for the delay; (3) the Appellant's

In reaching this conclusion, the Court of Criminal Appeals determined: (1) the length of the delay -- "over seven years to review a 143-page guilty plea" -- was facially unreasonable; (2) the record was "apparently lost in the mail for over six years," so the reason for the delay weighed heavily in Bush's favor; (3) Bush's unrebutted, unsworn declaration asserted that he repeatedly contacted his command and the Navy-Marine Corps Appellate Leave Activity inquiring about his case; and (4) Bush established specific prejudice by showing through a preponderance of the evidence that he was denied employment because he did not have his DD Form 214. Bush CCA I, 66 M.J. at 542-44. With respect to specific prejudice, the lower court reasoned:

> [Bush's] declaration asserts he was denied employment by the Costco store in Huntsville, Alabama, three to four years after his trial, specifically because he lacked his final discharge papers (DD Form 214). . . . In this instance, the appellant identified a specific store in a specific town during a specific timeframe. He specifically asserts the reason he was denied employment was directly tied to dilatory post-trial processing of his court-martial. Finally, he asserts that, by virtue of his prior employment in the same position with a Costco store in California, he was fully qualified to perform the job. We find this was "adequate detail" to permit the Government to inquire further in order to verify or dispute the appellant's assertions. . . . As the Government offers no evidence to refute the appellant's claims, we find

assertion of the right to timely review and appeal; and (4) prejudice. Bush CCA I, 66 M.J. at 542-44 (citing United States v. Jones, 61 M.J. 80, 83 (C.A.A.F. 2005)).

6

that the appellant has sustained his burden by a preponderance of the evidence that he has suffered prejudice due to post-trial delay.

Id. at 543 (citation and footnote omitted).

The Court of Criminal Appeals held that under the totality of the circumstances, it could not conclude that the error was harmless beyond a reasonable doubt. Id. at 544. As relief, the court affirmed only so much of the sentence as provided for a bad-conduct discharge. Id.

On March 12, 2008, the day after the Court of Criminal Appeals decided Bush CCA I, this court issued its opinion in Allende, 66 M.J. 142. Allende addressed a claimed denial of due process in a case that involved a seven-year delay between sentencing and resolution of Article 66, UCMJ, appellate review. Id. at 145. Allende claimed that he suffered prejudice on the grounds that a number of potential civilian employers were unwilling to consider him because he could not provide them with a DD Form 214. Id. Similar to this case, Allende submitted nothing more than his own declaration in support of his claim. Id. In Allende, we assumed a due process violation and proceeded directly to the question of whether the error was harmless beyond a reasonable doubt. Id. We recognized the fact that the appellant did not provide documentation from potential employers regarding their employment practices and did not demonstrate a valid reason for failing to do so. Id. We

7

concluded that in that context, the assumed error was harmless beyond a reasonable doubt and we noted that the appellant failed to present substantiated evidence to the contrary. Id.

In light of this court's opinion in Allende, the Court of Criminal Appeals, sitting en banc, reconsidered its decision in Bush CCA I. In a decision issued on August 19, 2008, the lower court maintained that Bush "provided an adequately detailed declaration articulating prejudice to his employment opportunities." Bush CCA II, 67 M.J. at 512. Citing Allende, however, the lower court concluded that Bush "has not met his additional burden to provide corroborating evidence or an explanation of why such evidence could not be obtained. Consequently, this fourth factor of prejudice weighs in favor of the Government." Id. Quoting our decision in Toohey, 63 M.J. at 362, the lower court went on to conclude that "even in the absence of specific prejudice to the appellant, the delay in the post-trial review of this case 'is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system.'" Bush CCA II, 67 M.J. at 512. The lower court consequently held that Bush's due process right to speedy post-trial review was violated. Id. The lower court went on to conclude that the Government had met its burden to show that the error was

harmless beyond a reasonable doubt.  Id. at 513.  In doing so, the Court of Criminal Appeals stated:

> The appellant's failure to independently corroborate his assertion of specific employment prejudice or alternatively to provide facts explaining his inability to provide such independent corroboration weighs heavily in our decision.  The appellant does not assert and our review of the record did not reveal evidence that the appellant has suffered ongoing prejudice from oppressive incarceration or undue anxiety.  We conclude, therefore, that the Government has met its burden to show that the post-trial error was harmless beyond a reasonable doubt.

Id. (footnote omitted).

DISCUSSION

1.  Requiring an appellant to provide independent evidence to substantiate a claim that he was impaired in his ability to obtain employment as a result of post-trial delay does not conflict with Ginn.

Bush contends that because the Court of Criminal Appeals specifically found that his declaration presented "'legally competent evidence' as well as 'state[d] a claim of legal error and provide[d] adequate detail to permit the Government to validate or dispute his claims[,]' . . . under Ginn, such evidence would have permitted the court to grant relief based on the affidavit."  Bush further contends that by relying on Allende to find the evidence insufficient and to require independent corroboration of employment prejudice, the Court of Criminal Appeals "effectively modified Ginn, at least in the context of post-trial delay cases."  In response, the Government

9

argues that the Ginn framework is unworkable as applied to post-trial claims of employment prejudice. The Government contends that it does not have a method to obtain witness testimony or documentary evidence at the appellate level where it has no subpoena power and that remand to a United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), hearing is essential to provide it with access to evidence.

To establish prejudice under the fourth Barker factor on the grounds that post-trial delay impaired an appellant's ability to secure employment, an appellant must do something more than provide his own affidavit asserting that a specific employer declined to hire him because he lacked a DD Form 214. In Bush CCA II, the Court of Criminal Appeals relied on Allende for the proposition that an appellant must provide corroborating evidence to support his claim of employment prejudice. 67 M.J. at 512. While the lower court correctly recognized the requirement, we note that it has been a part of our case law long before Allende.

Even before we adopted the Barker factors for analyzing allegations of post-trial delay due process violations, we rejected claims of employment prejudice in the absence of independent supporting evidence. In United States v. Jenkins, 38 M.J. 287, 289 (C.M.A. 1993), the appellant claimed that he was interviewed by a specific company but could not be hired

because he could not establish his Navy rating as an electronics technician without his DD Form 214.  This court rejected that claim noting that it was unsupported by any independent evidence.  Id.  As an appellant himself will generally lack personal knowledge as to why he did not get hired, the evidentiary deficiency in this circumstance is plain.  See Military Rule of Evidence (M.R.E.) 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); see also United States v. Gosser, 64 M.J. 93, 98 (C.A.A.F. 2006) (criticizing the appellant's prejudice arguments for failing to provide any substantive evidence "from persons with direct knowledge of the pertinent facts").

In most cases, the appropriate source of information pertaining to the hiring decisions of a potential employer will be a representative of the potential employer itself.  Such was the case in Jones, 61 M.J. at 84-85, where the appellant submitted the affidavits of three company officials stating that the appellant would have been considered for a position at the company if he had his DD Form 214.  In that context, this court determined that the appellant established prejudice to employment opportunities as a result of post-trial delay.  Id. at 85.

Contrary to Bush's contentions, we see no conflict between our cases requiring that an appellant support his assertions of employment prejudice with independent evidence and Ginn. As a general matter, the now familiar principles of Ginn provide a workable framework for analyzing when post-trial issues framed by post-trial affidavits can be resolved without ordering a factfinding hearing under DuBay, 17 C.M.A. 147, 37 C.M.R. 411.[5]

---

[5] Ginn sets forth a number of factors under which a post-trial evidentiary hearing would not be required. 47 M.J. at 248. As we have previously stated, "The linchpin of the Ginn framework is the recognition that a Court of Criminal Appeals' factfinding authority under Article 66(c) does not extend to deciding disputed question of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits." United States v. Fagan, 59 M.J. 238, 242 (C.A.A.F. 2004). However, "a post-trial evidentiary hearing is not required in every case simply because an affidavit is submitted by an appellant." Id. at 241. The six factors articulated in Ginn are as follows:

First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis;

Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis;

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts;

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a

See Ginn, 47 M.J. at 248.  However, if substantive law places a burden of proof or persuasion on either party with respect to issues raised post-trial, Ginn and its progeny do not relieve that party of such a burden.  See, e.g., United States v. Pena, 64 M.J. 259, 266-67 (C.A.A.F. 2007) (finding the appellant's declaration insufficient to support the post-trial claim that his participation in the Mandatory Supervised Release program produced an impermissible increase in the adjudged punishment). Nor does Ginn alter the fundamental requirement that a witness's testimony be based upon personal knowledge.  See M.R.E. 602.

In the context of Bush's claim of employment prejudice under the fourth Barker factor, he failed to provide independent evidence to support his claim that lack of a DD Form 214 impaired his ability to secure employment and did not demonstrate a valid reason for not doing so.  Consequently, the

whole "compellingly demonstrate" the improbability of those facts, the court may discount those factual assertions and decide the legal issue;

Fifth, when an appellate claim . . . contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record . . . unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal;

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met.

47 M.J. at 248.

fourth <u>Barker</u> factor is resolved against Bush before the question even arises as to whether, under <u>Ginn</u>, factual issues raised in his declaration could be resolved without a <u>DuBay</u> hearing.[6]  See <u>Jones</u>, 61 M.J. at 85 & n.25.  As such, we see no conflict.

   2.  <u>The post-trial delay due process violation was
   harmless beyond a reasonable doubt.</u>

Bush contends that once the Court of Criminal Appeals found a due process violation in the absence of <u>Barker</u> prejudice, it erred in finding that the due process violation was harmless beyond a reasonable doubt.  Bush argues that the lower court improperly interpreted <u>Allende</u> to effectively shift the burden to him to establish that the due process violation was not harmless beyond a reasonable doubt.  The Government responds that the lower court reached the right result but for the wrong reasons, arguing that the harmless beyond a reasonable doubt standard does not apply unless the appellant establishes constitutionally recognized prejudice -- which Bush did not do in this case.  The Government argues that because any error was not constitutional, the burden of showing prejudice was always upon Bush.

---

[6] That is not to say, however, that appellate courts will never utilize the <u>Ginn</u> framework when considering claims of employment prejudice from post-trial delay.  In <u>Jones</u>, for example, citing <u>Ginn</u>, 47 M.J. at 248, this court accepted the content of the unrebutted declarations from the potential employers and applied the law to the unrebutted facts.  61 M.J. at 85 & n.25.

Initially, we disagree with any characterization of Allende which suggests that the burden of proof or persuasion shifts to an appellant to demonstrate that a post-trial due process violation was not harmless beyond a reasonable doubt.  Aside from structural errors which are not susceptible of analysis for harm, a constitutional error must be harmless beyond a reasonable doubt before an appellate court can affirm the resultant conviction or sentence.  See United States v. Kreutzer, 61 M.J. 293, 298-99 (C.A.A.F. 2005); United States v. Hall, 58 M.J. 90, 94 (C.A.A.F. 2003) (citing United States v. Walker, 57 M.J. 174, 178 (C.A.A.F. 2002)).

It is also clear that it is solely the Government's burden to persuade the court that constitutional error is harmless beyond a reasonable doubt.  See Chapman v. California, 386 U.S. 18, 24 (1967); United States v. Cendejas, 62 M.J. 334, 337 (C.A.A.F. 2006) (citing United States v. Simmons, 59 M.J. 485, 489 (C.A.A.F. 2004)); Kreutzer, 61 M.J. at 300 (citing Chapman, 386 U.S. at 24).  We have not deviated from these black letter principles in developing our post-trial delay, due process jurisprudence.  See United States v. Young, 64 M.J. 404, 409 (C.A.A.F. 2007); United States v. Allison, 63 M.J. 365, 370 (C.A.A.F. 2006); United States v. Harvey, 64 M.J. 13, 25 (C.A.A.F. 2006).  This court reviews de novo both the determination of a post-trial delay due process violation and

15

the question of whether such a violation is harmless beyond a reasonable doubt.  Allison, 63 M.J. at 370 (citing Cendejas, 62 M.J. at 337).

As Bush notes in his brief, the determination of harmlessness for post-trial delay is different than that applied to constitutional trial errors.  In the trial error arena, a determination of harmless beyond a reasonable doubt tests "'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'"  United States v. Wolford, 62 M.J. 418, 420 (C.A.A.F. 2006) (quoting Kreutzer, 61 M.J. at 298); United States v. Grooters, 39 M.J. 269, 273 (C.M.A. 1994) (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)).

In contrast, post-trial delays do not necessarily impact directly the findings or sentence.  Instead, we must review the record de novo to determine whether other prejudicial impact is present from the delay.  See, e.g., United States v. Szymczyk, 64 M.J. 179, 179 (C.A.A.F. 2006) (relief required for due process violation where the delay "subjected Appellant to sex offender registration requirements longer than otherwise would have been necessary"); United States v. Dearing, 63 M.J. 478, 488 (C.A.A.F. 2006) (court unable to determine due process violation to be harmless beyond a reasonable doubt because, in part, Barker prejudice was found); Jones, 61 M.J. at 84-85

16

(interference with post-military employment opportunities). Unless we conclude beyond a reasonable doubt that the delay generated no prejudicial impact, the Government will have failed to attain its burden.

Despite the different nature of the inquiry into harmless beyond a reasonable doubt where there is a post-trial delay due process violation, the burden remains upon the Government.[7] And, just as we do in the case of constitutional trial errors, we review the totality of the circumstances to determine whether the due process violation is harmless beyond a reasonable doubt. Young, 64 M.J. at 409; United States v. Rodriguez-Rivera, 63 M.J. 372, 386 (C.A.A.F. 2006); Allison, 63 M.J. at 371.

Where an appellant alleges a due process violation in a post-trial delay context, and where a due process violation is found, the analysis performed by the appellate court necessarily

---

[7] In Allende, the court assumed a due process violation, which eliminated the need for the balancing analysis, and went directly to reviewing the totality of the circumstances to determine whether the assumed error was harmless beyond a reasonable doubt. 66 M.J. at 145 (citing Allison, 63 M.J. at 370-71). While Allende presents a different approach for coming to the conclusion that there was a due process violation than cases, such as this one, which utilize the Barker balancing analysis to determine that there was a due process violation, there is no difference in the burden and standard for reviewing whether that error was harmless beyond a reasonable doubt. See, e.g., Toohey, 63 M.J. at 359-62; Jones, 61 M.J. at 84-85. Specifically, under both approaches, the Government bears the burden and this court reviews the totality of the circumstances de novo.

involves two separate prejudice determinations.  For this reason, the discussion of "prejudice" in the context of a post-trial delay due process violation can be confusing.  To be clear, the initial prejudice review occurs in evaluating the fourth Barker factor, which defines prejudice to include oppressive incarceration, undue anxiety, and "'limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.'"  Moreno, 63 M.J. at 138-39 (citations omitted).  If a due process violation is found after balancing the Barker factors, the appellate court determines whether, under the totality of the circumstances, the error is harmless beyond a reasonable doubt.  That "harmless beyond a reasonable doubt" review necessarily involves a prejudice analysis, and although it involves a review of the same record, the scope and burden differ from the Barker prejudice analysis.

The en banc Court of Criminal Appeals found there was no Barker prejudice, but in balancing the remaining factors, the lower court determined that there was a due process violation. Bush CCA II, 67 M.J. at 512.  We have no reason to disturb that conclusion.[8]  Instead, in consideration of the granted issue, we

---

[8] As this court has previously stated, "[n]o single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding."  Moreno, 63 M.J. at 136.  In Toohey, we held that where no prejudice is

focus on the determination that the due process error was harmless beyond a reasonable doubt.  Id. at 513.  Bush contends that the court imposed a burden upon him to raise a reasonable doubt that the due process error was harmless.  We note that the language of the Court of Criminal Appeals could be read to suggest that by "weigh[ing] heavily" Bush's failure to substantiate his claim of employment prejudice the lower court placed some burden of production upon Bush.  Id.  If that is the effect of the lower court's decision, it is in error.  Bush bore no burden of demonstrating prejudice resulting from a due process violation.  However, in the absence of independent evidence that Bush would have been hired or was otherwise impaired from competing for a job for which he was qualified, it

---

found under Barker factor four, a due process violation could be found if the delay "is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system."  63 M.J. at 362. While the Government and the concurring opinion take issue with this language, it is not ultimately determinative in the present case and is therefore not addressed in the majority opinion. Nevertheless, the Government overreads this language.  Barker factor four addresses specific prejudice to an appellant, not public perception.  To clarify, the "public perception" analysis is utilized in quantifying the appropriate weight that is to be given to Barker factors one (length of delay) and two (reasons for delay) when balancing all the factors.  In this case, Barker factors one and two weigh in Appellant's favor; however, as detailed above, we decide this case on the ground that any appellate delay was ultimately harmless beyond a reasonable doubt.

is also true that the Government may more readily demonstrate that any error is harmless beyond a reasonable doubt.

We now review the totality of the circumstances de novo to determine whether the post trial delay was harmless beyond a reasonable doubt.  This case involves a seven-year post-trial delay, which is unreasonable on its face and which initially triggered the due process analysis.  The delay was largely unexplained and was attributed to the Government.  However, the record is bereft of any evidence of prejudice to Bush as a result of the delay.[9]  In circumstances where a record establishes that an appellant has suffered Barker prejudice, the

---

[9] As noted supra at pp. 6-7, the record contains Bush's own declaration claiming that he was not hired for a particular job because he did not have his DD Form 214.  Post-trial submissions have no automatic value as evidence where they are not relevant or where they are not based upon personal knowledge of the declarant.  See M.R.E. 401, M.R.E. 402, and M.R.E. 602.  Thus, with respect to determining whether an appellant meets his burden of demonstrating fourth-prong, Barker prejudice or with respect to reviewing the entire record to determine if a post-trial delay due process violation is harmless beyond a reasonable doubt, a reviewing court must first determine whether post-trial submissions merit consideration.  See Allende, 66 M.J. at 145 (assertions in personal affidavit about potential employers' employment practices not substantiated); Gosser, 64 M.J. at 98 (failed to substantiate any claim of Barker prejudice where, in part, clemency assertions of defense counsel were not based upon personal knowledge); Jones, 61 M.J. at 85 (prejudice established by the appellant's declaration about post-trial employment difficulties which was substantiated by independent declarations based upon personal knowledge).  Bush's declaration as to the reasons that the particular employer declined to hire him is not based on personal knowledge.  See supra at p. 11.  As such, his unsupported allegations of employment prejudice have no impact under our totality of the circumstances review.

Government's burden to establish that the constitutional violation was harmless beyond a reasonable doubt may be difficult to attain. The corollary seems apparent. In those cases where the record does not reflect Barker prejudice, as a practical matter, the burden to establish harmlessness may be more easily attained by the Government.

Under the totality of circumstances in this record, we are confident that the due process violation was harmless beyond a reasonable doubt. To find otherwise would essentially adopt a presumption of prejudice in cases where the appellate court has found a due process violation as a result of unreasonable post-trial delay in the absence of Barker prejudice. We have declined to adopt such a standard in the past and see no need to alter that position. See Moreno, 63 M.J. at 142 (noting that it is "unnecessary" to adopt a presumption of prejudice at this point as the court "can deter these delays and address the systemic delays we see arising in post-trial and appellate processing through less draconian measures"); see also Toohey, 63 M.J. at 363 ("we do not presume prejudice based on the length of the delay alone").

We have reviewed the totality of the circumstances and the entire record, and conclude that record reflects that the post-trial delay due process violation was harmless beyond a reasonable doubt. As a consequence, we conclude that any error

21

by the Court of Criminal Appeals in placing a burden of production on Bush was harmless beyond a reasonable doubt.

DECISION

We affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals.

United States v. Bush, No. 09-0119/MC

RYAN, J., with whom STUCKY, J., joins (concurring in the judgment):

Relying on this Court's holding in United States v. Toohey (Toohey II), the majority accepts the lower court's holding that the significant appellate delay in this case violated Appellant's Fifth Amendment right to due process. See United States v. Bush, __ M.J. __, __ (18 & n.8) (C.A.A.F. 2009) (finding due process violations when "the delay 'is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system'" (quoting Toohey II, 63 M.J. 353, 362 (C.A.A.F. 2006))). The majority then finds that any constitutional error from the delay was harmless beyond a reasonable doubt because the record contains insufficient evidence that Appellant was prejudiced by the delay. Id. at 18-21. Though I agree with the majority that Appellant is not entitled to relief, and therefore concur in the judgment, I do so because I do not believe that Appellant's Fifth Amendment rights were violated. I write separately because I think the Court should have accepted the Government's request to reconsider our appellate delay due process jurisprudence. This Court's apparent ruling in Toohey II should be abandoned, and we should cease the practice of basing due process violations on public perception.

The Fifth Amendment states "No person shall be . . .

deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  For convicted servicemembers with a right to an appeal, this prohibition grants a right to timely review of their convictions.  United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F. 2006).  To determine whether this right has been violated, this Court applies the four factors adopted by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972), for analyzing alleged violations of the Sixth Amendment Speedy Trial Clause:  (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) the prejudice to the appellant.  Moreno, 63 M.J. at 135; Toohey v. United States (Toohey I), 60 M.J. 100, 102 (C.A.A.F. 2004).

Our analysis of prejudice related to post-trial appellate delay considers three interests, each of which is tied to the delay and the appellant:  "'(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.'"  Moreno, 63 M.J. at 138-39 (quoting Rheuark v. Shaw, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).  Appellant did not allege and the lower court did not find any prejudice to these interests in this case.  United

States v. Bush, 67 M.J. 508, 513 (N-M. Ct. Crim. App. 2008) ("The appellant does not assert and our review of the record did not reveal evidence that the appellant has suffered ongoing prejudice from oppressive incarceration or undue anxiety."[1]). And although Appellant alleged employment prejudice, cf. United States v. Jones, 61 M.J. 80, 84 (C.A.A.F. 2005) (finding prejudice where appellant demonstrated that the delay actually interfered with his ability to find specific post-military employment), this claim failed because Appellant provided no "independent evidence to support his claim that lack of a DD Form 214 impaired his ability to secure employment and did not demonstrate a valid reason for not doing so." Bush, __ M.J. at __ (13).

The absence of prejudice in this case should end the due process inquiry. But in Toohey II, relied upon by both the United States Navy-Marine Corps Court of Criminal Appeals (CCA) and the majority in this case, the Court appeared to recognize a due process violation even in the absence of prejudice, based on delay so egregious "it would adversely affect the public's perception of the fairness and integrity of the military justice

---

[1] Although the CCA did not explicitly address it, Appellant has not alleged and the record does not indicate any impairment to his appeal or potential retrial.

system." Toohey II, 63 M.J. at 362.[2]  The problem is that damage to the public's perception of the military justice system, while unfortunate, has no relation to a deprivation of life, liberty, or property of an appellant, and does not constitute prejudice to an appellant.[3]  "Judges are not free, in defining 'due process,' to impose on law enforcement officials our 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.'"  United States v. Lovasco, 431 U.S. 783, 790 (1977) (quoting Rochin v. California, 342 U.S. 165, 170 (1952)).  In my view, Toohey II's holding

---

[2] Although the Court may have intended to reinterpret, rather than replace, the Barker factors, see Bush, __ M.J. at __ (19 n.8) ("To clarify, the 'public perception' analysis is utilized in quantifying the appropriate weight that is to be given to Barker factors one (length of delay) and two (reasons for delay) when balancing all the factors."), subsequent courts have nonetheless accepted the Toohey II opinion as a means of finding constitutional violations based only on public perception. See, e.g., United States v. Abdirahman, 66 M.J. 668, 683 (N-M. Ct. Crim. App. 2008) (treating adverse public perception as separate ground for relief); United States v. Bredschneider, 65 M.J. 739, 742 (N-M. Ct. Crim. App. 2007) ("After weighing the four Barker factors, we conclude that the appellant has not suffered a Barker-type post-trial due process violation.  However, even without specific prejudice, a due process violation may result if the "delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." (quoting Toohey II, 63 M.J. at 362)).  If this is not what the Court intended, that is all the more reason to revisit Toohey II.

[3] Further, I question whether Appellant has standing to complain of an injury to the public's perception of the military justice system.  Generally, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."  Powers v. Ohio, 499 U.S. 400, 410 (1991) (citing Dep't of Labor v. Triplett, 494 U.S. 715, 720 (1990); Singleton v. Wulff, 428 U.S. 106 (1976)).

4

impermissibly expands the scope of a purported constitutional violation beyond the bounds of interests protected by the Fifth Amendment.

Moreover, the holding in Toohey II permits this Court to find due process violations without any showing of specific prejudice to an appellant. 63 M.J. at 359 (stating that "'no single [Barker] factor [is] required to find that post-trial delay constitutes a due process violation'" (quoting Moreno, 63 M.J. at 136) (second bracketed interpolation in original)). Whatever the necessity or sufficiency of a particular Barker factor, though, and regardless whether there may be the rare and unusual situation where the prejudice factor can be either presumed or bypassed entirely, it does not follow that this Court may apparently substitute public perception as a new factor to replace a showing of prejudice. This practice puts our Court at odds with almost all other federal courts to have considered the issue.[4] Indeed, our post-trial-delay due process

---

[4] Seven circuits and the District of Columbia (which also applies Fifth Amendment law) have held that prejudice is a required element of a timely appeal due process violation. See, e.g., United States v. Rodriguez, 259 Fed. App'x 270, 277-78 (11th Cir. 2007); United States v. DeLeon, 444 F.3d 41, 57 (1st Cir. 2006); United States v. Gray, 52 Fed. App'x 650, 654 (6th Cir. 2002); United States v. Wiktor, 146 F.3d 815, 819 (10th Cir. 1998); United States v. Hawkins, 78 F.3d 348, 352 (8th Cir. 1996); United States v. Kimmons, 917 F.2d 1011, 1014–15 (7th Cir. 1990); United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir. 1990); United States v. Alston, 412 A.2d 351, 357-58 (D.C. 1980). One more circuit has applied a prejudice requirement

jurisprudence is based on the Supreme Court's Sixth Amendment speedy trial jurisprudence, which requires a showing of prejudice to establish a speedy trial violation.  Reed v. Farley, 512 U.S. 349, 353 (1994).  "[T]hat necessary ingredient is entirely missing here."  Id.

Nor is it clear how helpful Toohey II is to appellants in practice, as it necessarily leads to bizarre scenarios like the one presented today.  First, the CCA decided that Appellant had failed to establish any constitutionally cognizable prejudice.  Then, despite this failure, the CCA concluded that there was a due process violation based on public perception.  Finally, the CCA awarded no relief because it was convinced, as this Court agrees, that the constitutional violation was harmless beyond a reasonable doubt -- the Government met its burden because Appellant did not provide independent evidence of his lost

---

when analyzing the Fourteenth Amendment's due process protections, see Heiser v. Ryan, 15 F.3d 299, 304 (3d Cir. 1994), and would presumably apply such a requirement in a Fifth Amendment case.  Only the Second Circuit appears to find a due process violation without a showing of prejudice, but has then required a showing of prejudice before that violation warrants a remedy.  Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir. 1994).  The Fourth, Fifth, and District of Columbia Circuits do not appear to have addressed this point directly.  However, the Fifth Circuit has frequently stressed the importance of prejudice in analyzing alleged due process violations, calling it "the most important factor," and emphasizing that it is ordinarily, though perhaps not absolutely, required.  United States v. Bermea, 30 F.3d 1539, 1568-69 (5th Cir. 1994).  No court relies on public perception as a substitute for prejudice.

employment opportunity.

This reasoning comes dangerously close to shifting onto Appellant the burden of proving harmlessness.  Despite the assurances of the majority that Appellant "bore no burden of demonstrating prejudice," the majority admits that the Government's burden was "more readily demonstrate[d]" in the absence of such evidence.  __ M.J. at __ (19, 20); see also id. at __ (15) ("It is . . . clear that it is solely the Government's burden to persuade the court that constitutional error is harmless beyond a reasonable doubt.  We have not deviated from th[is] black letter principle[] in developing our post-trial delay, due process jurisprudence." (citations omitted)).  The reality, then, is that in cases where prejudice is not part of the basis for the alleged due process violation, the Toohey II rule arguably shifts the burden to the appellant in the harmlessness analysis to prove the very prejudice the Court failed to require in the first place.

This situation could easily be avoided.  If we were to require, like most of the federal circuits, a showing of prejudice before finding a due process violation, as the Supreme Court's speedy trial jurisprudence suggests we should, we would eliminate this problem:  If an appellant submits evidence of prejudice sufficient to show a constitutional violation, that evidence will already be part of the record and present for the

7

Court's consideration at the harmlessness analysis.  This would not only be cleaner and simpler, but it also would follow the ordinary model of constitutional inquiry into an alleged due process violation.  See, e.g., Gardner v. California, 393 U.S. 367, 370 (1969) (placing the burden on the petitioner to convince the appellate court of the error below); Chapman v. California, 386 U.S. 18, 24 (1967) (requiring "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"); United States v. Harvey, 64 M.J. 13, 25 (C.A.A.F. 2006) (quoting United States v. Brewer, 61 M.J. 425, 432 (C.A.A.F. 2005)).

I would revisit and either clarify or overrule Toohey II, but respectfully concur in the judgment.