*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

─────────────

### UNITED STATES
Appellee

**v.**

### Xavier L. ANDERSON, Private
United States Army, Appellant

**No. 21-0179**
Crim. App. No. 20180447

Argued November 16, 2021—Decided February 18, 2022

Military Judge: Michael S. Devine

For Appellant: *Captain Julia M. Farinas* (argued)*; Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley*, and *Captain Brianna C. Tuohy* (on brief); *Major Christian E. DeLuke* and *Major Rachel P. Gordienko.*

For Appellee: *Major Brett A. Cramer* (argued); *Colonel Steven P. Haight* and *Lieutenant Colonel Wayne H. Williams* (on brief); *Captain Melissa A. Eisenberg.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge HARDY, and Senior Judge COX joined. Judge MAGGS filed a separate concurring opinion.

─────────────

Judge SPARKS delivered the opinion of the Court.

This case arises out of the conviction of Private (E-2) Xavier L. Anderson (Appellant), in accordance with his pleas, of one specification of absence without leave and one specification of use of marijuana in violation of Articles 86 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a (2012); and the conviction, contrary to his pleas of one specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012). The military judge sentenced Appellant to a dishonorable discharge, thirty-eight months of confinement, and reduction to grade E-1. The convening authority approved the sentence. The United States Army Court of Criminal Appeals affirmed the finding and sentence in a per curiam opinion.

Appellant requests that this Court determine whether his due process right to speedy post-trial review has been denied. After assessing the relevant factors, we conclude that Appellant's due process rights have not been violated.

## I. Background

The granted issue focuses on the post-trial processing of Appellant's convictions. A time line of pertinent events in the post-trial process follows:

September 6, 2018 — The sentence is adjudged.

February 5, 2019 — The court reporter finishes the trial transcript, 152 days after the sentence was adjudged.

February 6–21, 2019 — The record of trial is with defense counsel.

February 26, 2019 — The military judge receives the record of trial.

September 30, 2019 — Defense counsel submits the first request for speedy post-trial review. The Chief of Military Justice (CoJ) replies that the military judge is still in the process of authentication.

November 5, 2019 — Defense counsel makes a second request for speedy post-trial review and the CoJ again responds that the record is with the military judge.

December 9, 2019 — Defense counsel makes a third request for speedy post-trial review and receives another response from the CoJ that the record remains with the military judge.

December 21, 2019 — The military judge authenticates the record of trial, 298 days after receiving it.

January 6, 2020 — The staff judge advocate signs the post-trial recommendations and these and the record of trial are delivered to defense counsel.

January 15, 2020 — Defense counsel submits Rule for Courts-Martial (R.C.M.) 1105 clemency matters.

January 16, 2020 — The convening authority approves the sentence.

A total of 497 days elapsed between the end of trial and the convening authority approving the sentence. Both parties agree that sixteen of those days are attributable to defense counsel's review of the record, leaving 481 days of Government delay.

The trial transcript was 635 pages long and included nineteen prosecution exhibits, eight defense exhibits, and thirty-three appellate exhibits.

## II. Analysis

Appellant contends that his due process right to speedy post-trial processing has been violated due to the extensive Government delay (481 days) between the end of trial and the convening authority's approval of the sentence. In particular, Appellant focuses on the 152 days it took the court reporter to transcribe the record and the 298 days it took the military judge to review and authenticate the record. Claims challenging the due process right to a speedy post-trial review and appeal are reviewed de novo. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006).

> The right to timely appellate review has both statutory and constitutional roots. A military appellant's right to a full and fair review of his findings and sentence under Article 66 embodies a concomitant right to have that review conducted in a timely fashion. We have observed that the Courts of Criminal Appeals' unique powers and responsibilities call[] for, if anything, even greater diligence and timeliness than is found in the civilian system. Additionally, the Due Process Clause guarantees a constitutional right to a timely review.

*Toohey v. United States*, 60 M.J. 100, 101–02 (C.A.A.F. 2004) (alteration in original) (footnotes and citations omitted) (internal quotation marks omitted).

In conducting a post-trial review of whether an appellant's Article 66, UCMJ, 10 U.S.C. § 866 (2018) and constitutional rights to timely review have been infringed, we evaluate the four factors set forth by the Supreme Court in *Barker v. Wingo* for assessing pretrial speedy trial issues. 407 U.S. 514, 530 (1972). These factors include: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*,

63 M.J. at 135. An analysis requires determining which factors favor the government or the appellant and then balancing these factors. *Id.* at 136. No single factor is dispositive, and absence of a given factor does not prevent finding a due process violation. *Id.*

**A. Length of Delay**

Post-trial review begins by determining whether there is a facially unreasonable delay sufficient to trigger a due process analysis. *Id.* Prior to *Moreno*, this assessment was made purely on a case-by-case basis.[1] *Toohey*, 60 M.J. at 102–03. However, in *Moreno*, this Court established definitive time frames that would trigger due process review.[2] Action of the convening authority must be taken within 120 days of the completion of the trial. *Moreno*, 63 M.J. at 142. Appellate review must be completed and a decision rendered within eighteen months of docketing before that court. *Id.* "The Government can rebut the presumption of unreasonable delay by showing the delay was not unreasonable." *Id.* Once the due process inquiry is triggered, the length of delay is itself balanced with the other factors. *Toohey*, 60 M.J. at 102.

---

[1] Many factors can affect the reasonableness of appellate delay. These include not only such universal concerns as length of the record and complexity of the issues, but also military-unique considerations . . . . These variables convince us that there is no talismanic number of years or months [of appellate delay] after which due process is automatically violated.

*Toohey*, 60 M.J. at 102–03 (alteration in original) (internal quotation marks omitted) (citation omitted).

[2] This Court is aware that the amendments to the rules governing post-trial processing contained in the 2017 National Defense Authorization Act and R.C.M. 1109–1112 of the 2019 Rules for Courts-Martial call into question the continued validity of the *Moreno* time lines. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5321–5323 (2016). However, because Appellant's charges were referred prior to the effective dates of these amendments, we need not address this issue in order to resolve this appeal.

The length of the delay in this case is not as extensive as many this Court has reviewed. *See United States v. Bush*, 68 M.J. 96, 104 (C.A.A.F. 2009) (challenging a seven-year post-trial delay); *United States v. Toohey*, 63 M.J. 353, 357 (C.A.A.F. 2006) (challenging a delay in which the convening authority took action 644 days after trial and 2,240 days passed between the end of the court-martial and the lower court decision); *Moreno*, 63 M.J. at 133 (challenging a delay in which 1,688 days elapsed between the end of trial and the completion of appeal, 490 of which covered the time between sentencing and the convening authority's action). However, the current delay clearly exceeds the *Moreno* standard and is enough to trigger a due process analysis. The 481 days between the sentence being adjudged and the convening authority taking action is almost four times as long as the 120-day limit set by *Moreno*. This factor weighs in favor of Appellant.

## B. Reasons for Delay

Under this factor we look at how much of the delay was under the Government's control. We also assess any legitimate reasons for the delay, including those attributable to an appellant. *Moreno*, 63 M.J. at 136. The delay highlighted by Appellant resulted from the actions of the court reporter and the military judge and therefore was entirely under the Government's control.

The Government did not provide any detailed or specific reason for the delay in creating the transcript or authenticating the record of trial. In the Government's brief, the military judge's slow pace was generally attributed to "the realities, circumstances, and operational tempo" of the Fort Bliss trial circuit. Though the CoJ acknowledged receipt of Appellant's speedy trial requests, there was no indication that he took any steps to speed the process beyond confirming that the military judge had the record. The military judge took 298 days to authenticate the record. Given the Government's inability to provide any particularized reason for the delay, this factor weighs in favor of Appellant.

## C. Assertion of Right to Timely Appeal

"[W]here the defendant has asserted his speedy trial right, it is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."

*Moreno*, 63 M.J. at 138 (internal quotation marks omitted) (quoting *Barker*, 407 U.S. at 531–32). Here, Appellant made three requests for speedy post-trial processing during the time the record was with the military judge, on September 30, 2019, November 5, 2019, and December 9, 2019. We also weigh this factor in favor of Appellant.

### D. Prejudice

Prejudice due to post-trial delay is assessed in light of the potential impact on the appellate process. This Court has recognized three interests that should be considered: (1) prevention of oppressive incarceration pending appeal; (2) anxiety and concern; and (3) limiting the possibility that a convicted person's grounds for appeal and defenses, in case of retrial, might be impaired. *Id.* at 138–39 (internal quotation marks omitted) (quoting *Reuark v. Shaw*, 628 F.2d, 297, 303 n.8 (5th Cir. 1980)).

Here, Appellant claims prejudice in the form of heightened anxiety and concern because he could have been considered for both clemency and parole at an earlier date had his case been processed in a timely manner. Appellant argues that this anxiety stemmed from the fact that he was not allowed the same rights as similar inmates. According to Army regulations, a prisoner is eligible for clemency after having been imprisoned for nine months if the convening authority has acted on the sentence. Dep't of the Army, Reg. 15-130, Boards, Commissions, and Committees, Army Clemency and Parole Board para.3-1(*e*)(1) (Nov. 19, 2018) [hereinafter AR 15-130]. A prisoner is eligible for parole after having served one-third of the adjudged confinement (in Appellant's case that would be just over a year) if the convening authority has acted on the sentence. AR 15-130 para. 3-2(*b*)(1)(*c*).

"The anxiety and concern subfactor involves constitutionally cognizable anxiety that arises from excessive delay and we require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Toohey*, 63 M.J. at 361 (internal quotation marks omitted) (quoting *Moreno*, 63 M.J. at 140). Here we see no evidence of such particularized heightened anxiety. As the Government argues, the likelihood of receiving parole or

clemency is highly speculative and there is no indication Appellant would have been granted either at the earliest possible date. We contrast the speculative anxiety and concern offered here to the more concrete evidence of anxiety and concern provided in *United States v. Jones*, 61 M.J. 80 (C.A.A.F. 2005). In *Jones*, this Court found prejudice after multiple witnesses declared that the appellant would have been hired or seriously considered for employment with a particular company but for the delay in his discharge paperwork. *Id.* at 84*; see also Bush*, 68 M.J. at 101 (determining there was no *Barker* prejudice because the appellant's assertion that post-trial delay led to a lost job opportunity was uncorroborated). The uncertainty of any possible impact of the delay here—maybe he could have been paroled earlier and maybe he could have merited clemency—does not raise evidence substantial enough to establish prejudice. This factor weighs in favor of the Government.

Where there is no finding of *Barker* prejudice, a due process violation only occurs when, "in balancing the three other factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.[3] A delay like the one in the present case is not severe enough to taint public perception of the military justice system. It did not involve the years of post-trial delay we saw in cases such as *Moreno*, *Toohey*, and *Bush*. There is no indication of bad faith on the part of any of the Government actors. There is also no indication of prejudice. *See Bush* 68 M.J. at 104 (concluding that, despite a seven-year post-trial delay attributed to the government, the lack of prejudice made any due process error harmless beyond a reasonable doubt). Though we cannot condone the military judge's unsubstantiated delay in authenticating a fairly straightforward trial record,[4] we find it difficult to imagine

---

[3] *In Toohey*, this Court found an egregious due process violation in an approximately six-year delay between end of trial and the lower court issuing its decision. 63 M.J. at 362.

[4] Here, the Government is seemingly asking us to take judicial notice of the operational tempo of the command to justify the military judge's delay. If so, we choose not to. Under Military Rule of Evidence (M.R.E.) 201(b), the military judge may judicially notice a

these circumstances causing the public to doubt the entire military justice system's fairness and integrity.

### III. Conclusion

Though the post-trial delay was lengthy enough to trigger a review under *Moreno*, it resulted in no prejudice to Appellant, nor did it threaten the public's trust in the fairness and integrity of the military justice system. Therefore, no due process violation occurred.

### IV. Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

fact that is not subject to dispute because it is generally known or can be accurately determined from sources whose accuracy cannot reasonably be questioned. In *United States v. Paul*, this Court confirmed that appellate courts can also take judicial notice of law and fact. 73 M.J. 274, 278 (C.A.A.F. 2014). However, the Government has provided no information that makes indisputable the operational tempo of Fort Bliss.

Judge MAGGS, concurring.

The Court's opinion announces no new rule of law but instead endeavors only to apply principles already established by our leading precedents on the issue of post-conviction delay: *Toohey v. United States (Toohey I)*, 60 M.J. 100 (C.A.A.F. 2004), *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), *United States v. Toohey (Toohey II)*, 63 M.J. 353 (C.A.A.F. 2006), and *United States v. Bush*, 68 M.J. 96 (C.A.A.F. 2009). Following the command of these cases to balance four factors borrowed from *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Court today concludes that the post-conviction delay in this case did not violate due process. *United States v. Anderson*, __ M.J. __, __ (8) (C.A.A.F. 2022). The Court rests this conclusion primarily on its analysis of the "prejudice" factor.[1] *Id.* at __ (6–8). The Court decides that the possibility that the delay actually prejudiced Appellant is speculative, *id.* at __ (7), and further determines that the delay was not so egregious that it caused prejudice to " 'the public's perception of the fairness and integrity of the military justice system,' " *id.* (quoting *Toohey II*, 63 M.J. at 362). And because the Court concludes that no due process violation occurred, the Court properly does not undertake the last step of the *Moreno* analysis, which is to consider whether any due process violation is ultimately harmless. *See Bush*, 68 M.J. at 104 (concluding that, even if a due process violation occurred under *Moreno*, the violation was harmless).

I join the Court's opinion. I agree with the Court that no due process violation occurred here because any claim of actual prejudice to Appellant is speculative. This Court held in *Toohey II* that egregious delay can violate due process by adversely affecting the public's perception of the military justice system even though the accused suffered no actual prejudice. 63 M.J. at 362. Even if this precedent is correct, I see nothing in the record that would justify concluding that the delay in

---

[1] The Court determines that the other three *Barker* factors weigh in favor of Appellant and against the Government. *Anderson*, __ M.J. at __ (5–6). But the Court's brief remarks about these three factors ultimately do not appear to be necessary to the Court's holding that no due process violation occurred *in this case* given the lack of prejudice.

this case caused such an adverse effect. *See United States v. Jessie*, 79 M.J. 437, 439–45 (C.A.A.F. 2020) (explaining the general principle that appellate courts usually can grant sentence relief based only on matters in the record).

I write separately to emphasize that the parties in this case have not challenged the continued validity of *Moreno* or any other decisions. Instead, they have argued only about the application of our precedents. Accordingly, this Court has no reason to consider here whether recent congressional action and judicial pronouncements have called into question any aspects of our cases. Our decision not to address such issues in this appeal, however, should not preclude litigants from arguing about the effects of recent legislative action or judicial decisions in future cases.

## I. Post-*Moreno* Legislative Developments

In *Moreno*, this Court announced—by my count—about a dozen rules or standards for appellate courts to apply when litigants seek relief for post-conviction delay. *Moreno*, 63 M.J. at 135–43. In a separate opinion, Judge Crawford disagreed with the substance and application of many of the principles that the Court announced. *See id.* at 144 (Crawford, J., concurring in part and dissenting in part). But more fundamentally, Judge Crawford questioned whether the Court was "overstepping [its] judicial role" by creating new rules and asserted that the Court "should leave the rulemaking function where it belongs—to the executive and legislative branches." *Id.* at 151, 152. The Court responded to Judge Crawford with an assertion of necessity. After recounting appalling facts about lengthy appeals, the Court partially justified its announcement of new principles by declaring that "some action is necessary to deter excessive delay in the appellate process and remedy those instances in which there is unreasonable delay and due process violations." *Id.* at 142 (opinion of the Court).

Whether or not necessity was a proper justification for the *Moreno* decision, a key legislative development has since occurred. Congress now has taken "some action" in response to

post-conviction delay. In the Military Justice Act of 2016,[2] Congress enacted a host of changes addressing post-conviction processing and appeals. A major goal of these changes was "to simplify and expedite processing of court-martial convictions." David Schlueter, *Reforming Military Justice: An Analysis of the Military Justice Act of 2016*, 49 St. Mary's L.J. 1, 75 (2017). These changes are highly pertinent. As one example, Congress granted the Secretary of Defense authority to promulgate standards for "[c]ase processing and management" and the "[t]imely, efficient, and accurate production and distribution of records of trial within the military justice system." Article 140a(a)(2)–(3), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 940a(a)(2)–(3) (2018). The authority that Congress has directed the Secretary of Defense to exercise arguably overlaps with authority this Court felt necessary to assume for itself when the Court announced many of the rules and standards in *Moreno*. As another example, Congress has eliminated the requirement that the military judge authenticate the record of trial. *See* Article 54(a), UCMJ, 10 U.S.C. § 854(a) (2018) (now requiring the court reporter to certify the record). The former requirement of authentication by the military judge was the source of the greatest delay in this case. Regardless of what we say about such delay today, I hope that it will not be seen again.[3] Numerous other new legal provisions have made post-conviction processing and appeals substantially different from what they were when this Court decided *Moreno*. *See* Schlueter, *supra*, at 74–92. Future litigation will need to determine the extent to which this new legislation has superseded what this Court declared in *Moreno*.

---

[2] The Military Justice Act of 2016 is a division of the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001–5542, 130 Stat. 2000, 2894–2967 (2016).

[3] I express no opinion on whether a service regulation still could require a military judge to authenticate a record. *See* Dep't of the Army, Reg. 27-10, Legal Services, Military Justice para. 5–56.*f.* (Nov. 20, 2020) (continuing to require authentication by the military judge).

## II. Post-*Moreno* Judicial Developments

A key aspect of the *Moreno* analysis for determining whether post-conviction delay violates due process is the application of the *Barker* factors. *Moreno*, 63 M.J. at 135. The Court in *Moreno* recognized that the Supreme Court had announced the *Barker* factors for assessing violations of the Sixth Amendment's Speedy Trial Clause. *Id.* But the Court applied the *Barker* factors to determine whether a due process violation had occurred in post-conviction processing because—in the absence of any other guidance from the Supreme Court—most lower courts had decided to use the *Barker* factors for this purpose. *Id.* at 135 & n.6; *see also Toohey I*, 60 M.J. at 102 & n.10 (applying the *Barker* factors even before *Moreno* was decided).

Since our decision in *Moreno* a significant judicial development has occurred. In *Betterman v. Montana*, 578 U.S. 437, 441 (2016), the Supreme Court held that the Speedy Trial Clause did not apply to post-conviction delay in sentencing because the speedy trial "right detaches upon conviction." The Supreme Court recognized that post-conviction delay might violate due process but did not decide whether a due process violation had occurred in the case because the petition had not raised a due process argument. *Id.* at 448. In its brief discussion of the due process issue, the Court described the due process standard as "more pliable" than the speedy trial test. *Id.* Then in a footnote, without citing *Barker*, the Court asserted: "Relevant considerations [in the due process analysis] *may include* the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice." *Id.* at 448 n.12 (emphasis added).

A concurring opinion, written by Justice Thomas and joined by Justice Alito, provided further discussion of the due process issue. *Id.* at 449 (Thomas, J., joined by Alito, J., concurring). This concurring opinion asserted that "[t]he factors listed in *Barker* may not necessarily translate" for analyzing a post-conviction delay. *Id.* As an illustration, the concurring opinion explained that the "Due Process Clause can be satisfied where a State has adequate procedures to redress an improper deprivation of liberty," including "extraordinary legal remedies, such as mandamus." *Id.* at 449–50.

In the light of the new guidance from *Betterman*, courts in other jurisdictions have recognized that they may have to reexamine how they apply the *Barker* factors in analyzing claims that post-conviction delay has violated due process. *See, e.g., United States v. James*, 712 F. App'x 154, 161–62 (3d Cir. 2017) (recognizing that "*Betterman* might require a shift in our speedy sentencing jurisprudence" but avoiding deciding the issue because the appellant could not prevail under the *Barker* factors and therefore necessarily could not prevail under the more relaxed due process standard); *United States v. Yupa Yupa*, 796 F. App'x 297, 299 (7th Cir. 2019) (noting that *Betterman* may affect the analysis of post-conviction delay and that "[g]eneral concepts of due process require that a defendant demonstrate prejudice from the delay"). In an appropriate case, litigants might ask this Court to consider points raised by *Betterman* that this Court did not consider when it decided *Moreno*.

### III. Conclusion

The Westlaw database reveals that this Court and other courts have cited our decision in *Moreno* in more than 1,000 cases and orders. This large number of citations suggests that post-conviction delay remains a serious concern in the military justice system. The large number of citations also indicates that the tests that this Court uses to assess post-trial delay are extremely important. For these reasons, ensuring that our doctrines accord with recent legislative and judicial developments is imperative.