# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Senior Airman DANNY M. BURNS
## United States Air Force

## ACM 37847 (rem)

## 23 November 2015

Sentence adjudged 13 November 2010 by GCM convened at MacDill Air Force Base, Florida. Military Judge: W. Thomas Cumbie and Michael J. Coco.

Approved Sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Appellate Counsel for Appellant: Major Scott W. Medlyn; Major Nathan A. White; Major Zaven T. Saroyan; Captain Lauren A. Shure; and Frank J. Spinner, Esquire (civilian counsel).

Appellate Counsel for the United States: Lieutenant Colonel Jennifer A. Porter; Lieutenant Colonel Linell A. Letendre; Lieutenant Colonel C. Taylor Smith; Major Scott C. Jansen; Major Tyson D. Kindness; Major Brian C. Mason; Major Charles G. Warren; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT
UPON REMAND

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

Appellant was tried by a general court-martial comprised of officer members. He was charged with wrongful use of cocaine and Ecstasy, aggravated sexual assault, and

forcible sodomy, in violation of Articles 112a, 120, and 125, UCMJ, 10 U.S.C. §§ 912a, 920, 925. Consistent with his pleas, he was found guilty of the two wrongful use specifications and found not guilty of aggravated sexual assault. Contrary to his plea, he was found guilty of forcible sodomy. He was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

*Background*

In September 2009, Appellant went out drinking and dancing with three other male Airmen. They met several women who then accompanied the group to various locations. By the end of the evening, only one of the women was still with them. Later that night, she ended up at Appellant's apartment with the four men. Appellant was charged with engaging in sexual intercourse with her while she was substantially incapacitated as well as forcibly sodomizing her. She testified about what she remembered from the events of the night, as did the three Airmen. Appellant was convicted of forcible sodomy but acquitted of aggravated sexual assault.

Appellant pled guilty to wrongfully using cocaine and ecstasy in June 2009. In his providence inquiry, he described becoming intoxicated and being at a party where illegal drugs were being used, including pills and cocaine. Although he did not recall taking drugs, he became aware that he was feeling the effects of taking drugs and admitted he willingly joined the activity. After he awoke the next morning at another house, he found a bag in his car that contained a white powdery substance that he suspected was cocaine and realized money was missing from his bank account. The next day, he was selected for a random urinalysis and tested positive for cocaine and ecstasy.

*Procedural History*

On 25 June 2013, the Secretary of Defense appointed a civilian employee of the Department of the Air Force, who was also a retired Air Force officer and a former active duty appellate military judge, to serve as an appellate military judge on the Air Force Court of Criminal Appeals. When Appellant's case was initially before us, Appellant raised three issues, contending: (1) the evidence was factually and legally insufficient to sustain the conviction for forcible sodomy; (2) the judge erred by instructing the jury to disregard the requirement of sex offender registration when determining a punishment; and (3) the staff judge advocate's recommendation erroneously referred to a separate court-martial when recommending a course of action to the convening authority. We found the evidence factually insufficient to support Appellant's conviction for forcible sodomy in Charge III, set aside the conviction for that offense, and reassessed the sentence. *United States v. Burns,* ACM 37847 (A.F. Ct. Crim. App. 24 July 2013) (unpub. op.). The civilian employee was a member of the panel that decided Appellant's case.

On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that the earlier appointment was "invalid and of no effect." On 11 March 2015, our superior court concluded the improper appointment of the civilian employee by the Secretary of Defense was not waived by an earlier failure to object. *United States v. Jones*, 74 M.J. 95 (C.A.A.F. 2015). Pursuant to *Janssen* and *Jones*, our superior court reversed our decision in this case on 30 March 2015 and remanded it to us for a new review under Article 66, UCMJ, 10 U.S.C. § 866, before a properly constituted panel. *United States v. Burns*, 74 M.J. 330 (C.A.A.F. 2015).

In light of this ruling by our superior court, we have reviewed Appellant's case with a properly constituted panel. Our review includes Appellant's previous filings and the previous opinion issued by this court, the briefs filed with our superior court, as well as a supplemental assignment of errors filed with this court in which Appellant asserts he is entitled to relief due to excessive post-trial processing delays between the docketing of his case with this court in 2011 and this decision in 2015.

*Factual Sufficiency*

We review issues of factual sufficiency de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987), *quoted in United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our factual sufficiency determination is limited to a review of the "entire record," meaning evidence presented at trial. *Reed*, 54 M.J. at 43; *United States v. Bethea*, 46 C.M.R. 223, 225 (C.M.A. 1973).

To convict Appellant of forcible sodomy, the Government must prove two elements beyond a reasonable doubt: Appellant engaged in unnatural carnal copulation, and the act was done by force and without consent. *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 51.b.(1), (4) (2008 ed.). The Government also has the burden of proving beyond a reasonable doubt that the mistake of fact defense did not exist. For both sexual offenses, the Government's theory was that the victim was substantially incapacitated when Appellant engaged in sexual intercourse and oral sodomy with her. In contrast, the defense argued she consented to the activity and was not substantially incapacitated, as well as arguing Appellant had an honest and reasonable mistake of fact

as to her consent to the activities. The panel acquitted Appellant of aggravated sexual assault, but convicted him of engaging in forcible sodomy.

We have reviewed the record of trial and evaluated the arguments by Appellant and the Government. We have evaluated the entire record of trial and have made allowances for not having heard and observed the witnesses. Having done so, and having considered the unique facts of this case on its merits, we are not personally convinced of Appellant's guilt of forcible sodomy. Given the totality of the circumstances in this case, we are not ourselves convinced beyond a reasonable doubt that the Government has disproven the defense of mistake of fact. Accordingly, we do not find the evidence to be factually sufficient to find Appellant guilty of forcible sodomy.[1]

It should go without saying that a court-martial is a most serious matter, and the requirement for proof beyond a reasonable doubt plays a vital role in the legitimacy of the military justice system. A "society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." *In re Winship*, 397 U.S. 358, 363–64 (1970). In the military justice system, where servicemembers accused at court-martial are denied some rights provided to other citizens, our unique factfinding authority is a vital safeguard designed to ensure that every conviction is supported by proof beyond a reasonable doubt. *See Ex parte Quirin*, 317 U.S. 1, 40–41 (1942) (stating that there is no constitutional right to a trial by jury in courts-martial); *O'Callahan v. Parker*, 395 U.S. 258, 265 (1969) (recognizing differences between courts-martial and civilian criminal proceedings and observing that "[a] court-martial is not yet an independent instrument of justice but remains to a significant degree a specialized part of the overall mechanism by which military discipline is preserved"), *overruled on other grounds by Solorio v. United States*, 483, U.S. 435, 440–41 (1987). This authority "provide[s] a source of structural integrity to ensure the protection of service members' rights within a system of military discipline and justice where commanders themselves retain awesome and plenary authority." *United States v. Jenkins*, 60 M.J. 27, 29 (C.A.A.F. 2004). Most cases reviewed by this court are deemed factually sufficient. However, in this instance, we simply are not personally convinced that Appellant is guilty of the forcible sodomy offense. Accordingly, we dismiss Charge III and it specification.[2]

*Addendum to the Staff Judge Advocate's Recommendation*

The last paragraph of the addendum to the staff judge advocate's recommendation (SJAR) was erroneous in that it contained facts and recommendations that relate to another Airman as opposed to Appellant. That paragraph states the convening authority had previously approved "[Senior Airman] Jackson's" request for deferment and waiver

---

[1] The panel was not instructed on consensual sodomy.

[2] Having dismissed Charge III and its specification on the basis of factual insufficiency, we do not address legal sufficiency.

of forfeitures and recommends the convening authority approve an adjudged sentence that does not correspond to that adjudged in Appellant's case. The remainder of the addendum, and all of the SJAR, relate to Appellant and are accurate.

The question of whether an error in an SJAR or addendum requires post-trial relief is one that we review de novo. *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). Generally, errors in these documents are reviewed for plain error if the defense does not make a timely objection to the error. *Id.*; Rule for Courts-Martial (R.C.M.) 1106(f)(6). Here, however, there is no evidence in the record that the addendum was served on Appellant or his defense counsel, so a plain error analysis is not appropriate. *See* R.C.M. 1106(f)(7). Instead, we consider whether Appellant was prejudiced by this error, including considering whether the convening authority plausibly might have taken more favorable action if he had been provided accurate information. *United States v. Alis*, 47 M.J. 817, 827 (A.F. Ct. Crim. App. 1998).

In making this determination, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

We find the error in the addendum had no effect on the approved sentence in Appellant's case, and Appellant has made no colorable showing of possible prejudice. When considered in context with the other post-trial documents provided to the convening authority, this erroneous paragraph did not mislead him or result in prejudice to Appellant. The convening authority signed the action attached to the addendum, approving the sentence adjudged against Appellant (and not the slightly greater sentence adjudged against the other Airman). It is clear from the SJAR and the remainder of the addendum that the staff judge advocate would have continued with his initial recommendation that the adjudged sentence be approved by the convening authority and the convening authority would not have taken more favorable action if the addendum had provided accurate information.

*Instruction on Sex-Offender Registration*

In his unsworn statement, Appellant referenced the requirement that he register as a sex offender based on his forcible sodomy conviction. Over defense objection, the military judge instructed the panel that registration is a collateral consequence of Appellant's action and that they were not to rely on potential registration when determining an appropriate sentence for Appellant. Appellant now contends the military judge abused his discretion in giving this instruction.

In *United States v. Talkington*, 73 M.J. 212, 213 (C.A.A.F. 2014), our superior court held that sex offender registration is a collateral consequence of the conviction alone and has no causal relationship to the sentence imposed for the offense. Thus, while an accused is permitted to raise this collateral consequence in his unsworn statement, "the military judge may instruct the members essentially to disregard the collateral consequence" as they deliberate on an appropriate sentence for an accused. *Id.*; *see also United States v. Barrier*, 61 M.J. 482, 485–86 (C.A.A.F. 2005); *United States v. Tschip*, 58 M.J. 275, 277 (C.A.A.F. 2003). The military judge's instruction to the panel was in accordance with the holding in *Talkington* and not an abuse of discretion.

*Post-trial Delay*

Appellant argues, citing *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), that the unreasonable post-trial delay from the date the case was first docketed with this court in March 2011 until this opinion warrants relief. Appellant further cites *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), noting this court's broad power and responsibility to affirm only those findings and sentence that should be approved.

A military member has a right under Article 66, UCMJ, to timely appellate review of his findings and sentence by a service court. *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37 (C.A.A.F. 2003). He also has a separate and distinct constitutional right to a timely review guaranteed to him under the Due Process Clause.[3] *Id.* at 38; *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 101 (C.A.A.F. 2004).

When we examine claims of untimely appellate review under the Due Process Clause of the Constitution as a matter of law, that review involves the four-factor analysis elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *United States v. Simon*, 64 M.J. 205, 207 (C.A.A.F. 2006). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530. Our analysis balances these four factors to determine whether a due process violation occurred, and no single *Barker* factor is required before that conclusion can be reached. *Moreno*, 63 M.J. at 136.

We need not engage in this full due process analysis unless the appellate delay is facially unreasonable. *Id.* at 136; *United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). A case-by-case analysis is typically conducted to determine if a particular delay is facially unreasonable. *Id.* However, our superior court established a presumption of unreasonable delay if a decision is not rendered by a service court within 18 months of

---

[3] U.S. CONST. amend V.

docketing. *Id.* at 142. The *Moreno* standards continue to apply as a case continues through the appellate process. *See United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013).

This case was originally docketed with this court on 4 March 2011, and our initial decision was issued on 24 July 2013, 873 days (2 years, 4 months, 20 days) after docketing. In our July 2013 opinion, we sua sponte noted that our review of Appellant's case was not completed within 18 months of docketing and thus was presumptively unreasonable. *See Moreno*, 63 M.J. at 142. We also found that, after considering the totality of the circumstances and the entire record, the appellate delay was harmless beyond a reasonable doubt.

As part of his petition to our superior court in November 2013, Appellant submitted a declaration detailing, inter alia, difficulties he has encountered in his post-trial employment and living arrangements due to his status as a registered sex offender. After our original decision was reversed and the record returned to us, Appellant filed this supplemental assignment of error with this court. He essentially argues that, because our initial decision was not issued by a properly constituted panel, we should consider the time from initial docketing in March 2011 until this opinion as uninterrupted for analysis under those cases.

The time between the docketing of this case in March 2011 and the issuance of our initial decision in July 2013 is presumptively unreasonable as it exceeded *Moreno's* 18-month standard and triggers an analysis of the remaining *Barker* factors.

In contrast, the time between our superior court's March 2015 action to return the record of trial to our court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136. The reason for the delay between our first decision in July 2013 and our opinion today was to allow this court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[4] to appoint civilian employees to the service courts of criminal appeals. *See Janssen*, 73 M.J. at 221. We reject Appellant's argument that, because the Secretary of Defense's appointment of the civilian employee was invalid and of no effect, the *Moreno* clock was not tolled by our first decision. Due to the unusual circumstances of this case, however, we do take into account the overall length of this appeal when conducting our analysis of the post-trial delay in this case.

---

[4] U.S. CONST. art. II, § 2, cl. 2.

1.  Reasons for the delay

When considering the reasons for the delay, we look at the Government's responsibility for any delay, as well as any legitimate delays attributable to Appellant. *Moreno*, 63 M.J. at 136.

After the case was docketed on 4 March 2011, Appellant's military appellate defense counsel submitted three requests for enlargements of time, stating his heavy workload had prevented him from addressing Appellant's case. Following these enlargements, Appellant's brief was due on 30 November 2011. In the next (fourth) request for enlargement, the military counsel indicated Appellant had retained civilian counsel. That civilian counsel subsequently submitted four additional requests for enlargement, providing information on how his caseload was affecting his ability to file Appellant's brief. As the Government acknowledges, appellate delay resulting from military appellate defense counsel's requests for enlargement due to excessive workload are not attributed to individual appellants when analyzing this factor. *See United States v. Merritt*, 72 M.J. 483, 491 (C.A.A.F. 2013); *Moreno*, 63 M.J. at 137 (noting the Government is responsible for providing adequate staffing within the appellate defense divisions to provide competent and timely representation); *Diaz*, 59 M.J. at 38. We do, however, attribute the delays requested by civilian defense counsel to Appellant. *Merritt*, 72 M.J. at 489.

After Appellant's brief was filed on 27 April 2012, the Government sought and received multiple enlargements of time due to the workload of counsel and changes to assigned counsel. The Government brief was ultimately filed on 2 August 2012. This delay is attributable to the Government. *See United v. Harvey*, 64 M.J. 13, 23 (C.A.A.F. 2006) (holding that government counsel's caseload and volume of work in appellate government division do not constitute legitimate reasons for delays); *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) (holding that "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay").

The final period of delay occurred before this court issued its initial decision 351 days (11 months, 17 days) after the filing of Appellant's reply brief on 7 August 2012. Our superior court applies "a more flexible review of this period, recognizing that it involves the exercise of the Court of Criminal Appeals' judicial decision-making authority." *Moreno*, 63 M.J. at 137. In *Moreno*, our superior court held that "a period of slightly over six months is not an unreasonable time for review by the Court of Criminal Appeals." *Id.* at 137–38. We are unsure whether this same reasoning applies to a period of 351 days (almost 12 months) for review of this record of trial. *See Merritt*, 72 M.J. at 490 (noting a 351-day delay for a court of criminal appeals to decide a case after final briefing is "troubling"). We recognize that "the timely management and disposition of cases docketed" before this court is our responsibility. *Moreno*, 63 M.J. at 137.

In sum, this factor weighs heavily in favor of Appellant.

## 2. Assertion of the right to a timely review and appeal

Analyzing this factor requires us to examine Appellant's role in this delay. He did not object to any delay or assert his right to timely review and appeal prior to filing his petition with our superior court on 15 November 2013. He has now raised that issue with this court. We find this factor weighs against Appellant but only slightly. *Moreno*, 63 M.J. at 138 ("[T]he weight against [the appellant] is slight given that the primary responsibility for speedy processing rests with the Government . . . .").

## 3. Prejudice

"In the case of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay." *Moreno*, 63 M.J. at 138–39 (quoting *Rheuark v. Shaw*, 628 F.2d. 297, 303 n.8 (5th Cir. 1980). The interests protected by prompt appeals include prevention of oppressive incarceration pending appeal and the minimization of anxiety and concern while an appellant is awaiting the outcome of his appeals.[5] *Id.*

The concept of oppressive incarceration pending appeal is related to the success or failure of an accused's substantive appeal. *Id.* at 139. If an appellant has been incarcerated during the appeal period and his substantive appeal is meritorious, then the incarceration may have been oppressive. *Id.* Here, Appellant prevailed on his substantive appellate issue, but we find his incarceration was not oppressive. He was released from confinement shortly after his case was docketed with this court. This was before the appellate delays occurred and well before a timely appeal could have been completed. Therefore, the appellate delay here did not result in Appellant enduring incarceration awaiting this favorable decision on his appeal. *Compare Harvey*, 64 M.J. at 24 (holding that, despite a successful appeal, it was not oppressive incarceration when confinement was completed before convening authority action), *with United States v. Dearing*, 63 M.J. 478, 487 (C.A.A.F. 2006) (holding that it was oppressive incarceration when an appellant was still serving a 25-year sentence based on a conviction that was set aside).

---

[5] A third interest is the limitation of the possibility that a convicted person's grounds for appeal, and his defenses in case of reversal and retrial, might be impaired by the delay. *United States v. Moreno*, 63 M.J. 129, 139 C.A.A.F. 2006). This factor is related to whether a rehearing has been authorized following an appellant's successful appeal. If an appellant has a meritorious appeal and a rehearing is authorized, "the appellate delay encountered by the appellant may have a negative impact on his ability to prepare and present his defense at the rehearing." *Id.* at 140. "In order to prevail on this factor an appellant must be able to specifically identify how he would be prejudiced at rehearing due to delay. Mere speculation is not enough." *Id.* No such prejudice is articulated by Appellant. Furthermore, this court has not authorized a rehearing.

The interest in minimizing anxiety and concern "involves constitutionally cognizable anxiety that arises from excessive delay." *Moreno*, 63 M.J. at 139. In the military system, an appellant must show "particularized anxiety or concern that is distinguishable from the normal anxiety or concern that is experienced by prisoners awaiting an appellate decision." *Id.* at 140. Such anxiety or concern is related to the timeliness of the appeal and is not dependent on whether the substantive appeal is ultimately successful. *Id.* Instead, there must be a nexus between the anxiety or concern and the processing of the appeal, and the relief should be fashioned to compensate him for the particular harm. *Id.*

Sex offender registration requirements upon release from confinement can constitute the necessary "particularized anxiety" to constitute prejudice to an appellant where the post-trial delay was excessive and an appellant's offender-qualifying conviction was ultimately set aside during the appeal. *Moreno*, 63 M.J. at 140; *see also United States v. Preciado*, 67 M.J. 559, 563 (A.F. Ct. Crim. App. 2008) (finding prejudice where the appellant "remained registered as a sex offender in his home state far longer than he would have had his case been properly processed" during the post-trial stage of his case). *But see United States v. Lee*, 73 M.J. 166, 171 (C.A.A.F. 2014) (finding no particularized prejudice where the appellant's name had been removed from the sex-offender registry before the period of post-trial delay occurred); *Merritt*, 72 M.J. at 491 (finding sex-offender registration did not constitute the required "particularized anxiety" where the accused would still have to register as a sex offender regardless of appellate delay).

Here, Appellant has been subject to sex-offender registration since his release from confinement in March 2011. Given our decision that the evidence presented at trial was insufficient to support Appellant's forcible sodomy conviction, he will no longer be subjected to such registration once this decision is final.[6] Considering that Appellant has therefore experienced particularized anxiety or concern awaiting the outcome of his appeal, we conclude this prejudice factor weighs in favor of Appellant.

4. Balancing the *Barker/Moreno* factors

The unreasonable length of the delay, the lack of legitimate reasons for a substantial portion of the delay, and the specific prejudice suffered by Appellant as a result of particularized anxiety and concern all weigh heavily in favor of Appellant. His failure to initially assert his right to timely post-trial review weighs against him, but only slightly. Therefore, our balancing of the four *Barker/Moreno* factors leads us to conclude that Appellant was deprived of his due process right to speedy review and appeal.

---

[6] We note that Appellant has experienced this particularized anxiety and concern throughout the pendency of the appellate process, to include the 20 months during which our superior court was considering the Appointments Clause issue and the 8 months this case has been before us following remand.

Having found a due process violation after balancing these factors, we then review the record de novo to conduct a second prejudice analysis to determine whether, under the totality of the circumstances, the error is harmless beyond a reasonable doubt. *United States v. Bush*, 68 M.J. 96, 103 (C.A.A.F. 2009). The Government has the heavy burden of demonstrating beyond a reasonable doubt that no such prejudicial impact exists. *See id.* at 102; *Toohey*, 63 M.J. at 363; *Harvey*, 64 M.J. at 25. Where we have found an appellant has suffered prejudice under the *Barker* analysis, the Government will have a difficult time meeting this burden. *Bush*, 68 M.J. at 104; *Dearing*, 63 M.J. at 488 (finding the government failed to meet its burden because, in part, prejudice was found under the *Barker* analysis).

Because of the appellate delay, Appellant has been subject to sex-offender registration longer than otherwise would have been necessary if he had received his right to timely appellate review. The delay, therefore, has caused a prejudicial impact.[7] *See Bush*, 68 M.J. at 104. Under the totality of the circumstances, we find the Government has failed to meet its burden of demonstrating beyond a reasonable doubt that the delay generated no prejudicial impact. *See United States v. Szymczyk*, 64 M.J. 179 (C.A.A.F 2006) (mem.) (finding the denial of due process was not harmless beyond a reasonable doubt where the delay in issuing an appellate decision that set aside Appellant's sex-offender registration eligible offenses "subjected [the appellant] to sex-offender registration requirements longer than otherwise would have been necessary" and where he ultimately hired civilian counsel to represent him before the service court).

*Remedy for Errors*

As discussed above, this court has found the evidence factually insufficient to sustain Appellant's conviction of forcible sodomy and has also found Appellant was prejudiced when he was deprived of his constitutional right to the timely processing of his case. Our next task is to determine what the remedy should be for these two errors.

1. Factual Insufficiency

Because one of Appellant's convictions has been set aside, we must determine whether we can reassess the sentence, or whether we must order a rehearing. This court has "broad discretion" in deciding to reassess a sentence to cure error and in arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). To reassess the sentence, we must be able to reliably conclude that, in the absence of

---

[7] Appellant's declaration contains various claims about his loss of employment and his difficulty in gaining employment due to his status as a registered sex offender. In balancing the *Barker/Moreno* factors, we recognize and follow our superior court's holding that an appellant's "unsupported allegations of employment prejudice have no impact under [this] totality of the circumstances review" unless he supports that claim with independent evidence or provides a valid reason for failing to do so. *United States v. Bush*, 68 M.J. 96, 100–01 (C.A.A.F. 2009); *see also United States v. Allende*, 66 M.J. 142, 145 (C.A.A.F. 2008).

error, the sentence "would have been at least of a certain magnitude," and the reassessed sentence must be "no greater than that which would have been imposed if the prejudicial error had not been committed." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). We must be able to determine this to a "degree of certainty." *United States v. Eversole*, 53 M.J. 132, 134 (C.A.A.F. 2000); *see also United States v. Taylor*, 51 M.J. 390, 391 (C.A.A.F. 1999) (holding we must be able to reach this conclusion "with confidence"). "The standard for reassessment is not what would be imposed at a rehearing but what would have been imposed at the original trial absent the error." *United States v. Taylor*, 47 M.J. 322, 325 (C.A.A.F. 1997); *see also United States v. Davis*, 48 M.J. 494, 495 (C.A.A.F. 1998) (holding no higher sentence than that which would have been imposed by the trial forum may be affirmed). A reassessed sentence "must be purged of prejudicial error and also must be 'appropriate' for the offense[s] involved" based on our sentence approval obligation under Article 66(c), UCMJ. *Sales*, 22 M.J. at 308.

In determining whether to reassess a sentence or order a rehearing, we consider the totality of the circumstances, including certain illustrative, but not dispositive, factors: (1) dramatic changes in the penalty landscape and exposure, (2) the forum, (3) whether the remaining offenses capture the gravamen of the criminal conduct included within the original offenses, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we as appellate judges have the experience and familiarity to reliably determine what sentence would have been imposed at trial by the sentencing authority. *Winckelmann*, 73 M.J. at 15–16.

There is no longer a finding that Appellant sexually assaulted a fellow Airman and there is no longer a maximum sentence that includes confinement for life without eligibility for parole. Instead, the panel would have been sentencing Appellant for two controlled substance specifications stemming from his use of the drugs on one night when he was intoxicated. These offenses carry a maximum of 10 years of confinement. Thus, the sentencing landscape has changed significantly as a result of our decision, which generally gravitates away from our ability to reassess the sentence, as does the fact that Appellant was sentenced by a panel. *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003); *Winckelman*, 73 M.J. at 14. The remaining drug offenses do not relate to or capture the gravamen of the set aside charge, and no significant or aggravating circumstances regarding the sexual incident remain admissible. These offenses, however, are of the type that we have experience and familiarity with as appellate judges. Considering the totality of the circumstances of this case, including the factors elucidated in *Winckelmann*, we are confident we can reassess the sentence.

Based on Appellant's convictions for forcible sodomy and wrongful use of cocaine and ecstasy, the panel sentenced Appellant to a bad-conduct discharge, confinement for 6 months, and reduction to E-1. In this case, the totality of the circumstances leads us to conclude that we can reassess the sentence to affirm only so

much as provides for confinement for three months and reduction to E-1. We can confidently and reliably determine that, absent the error, the sentence adjudged by the members would have been at least that magnitude.

## 2. Appellate Delay

Once a denial of speedy appeal has been found after the balancing of the four *Barker* factors, reviewing authorities "should 'tailor an appropriate remedy, if any is warranted, to the circumstances of the case.'" *Moreno*, 63 M.J. at 143 (quoting *United States v. Jones*, 61 M.J. 80, 86 (C.A.A.F. 2005)). In *Moreno*, our superior court provided a nonexclusive list of relief available for post-trial delays which includes, in pertinent part, (1) setting aside all or portions of an approved sentence, and (2) dismissal of the charges and specifications with or without prejudice. *Moreno*, 63 M.J. at 143. Fashioning such a remedy for excessive post-trial delay is within our broad discretion under Article 66(c), UCMJ. *Tardif*, 57 M.J. at 224; *United States v. Pflueger*, 65 M.J. 127, 128 (C.A.A.F. 2007).

Sex-offender registration automatically subjected Appellant "to unique ramifications, including . . . residency-reporting requirements and place of domicile restrictions." *United States v. Riley*, 72 M.J. 115, 120–21 (C.A.A.F. 2013). Our superior court has held that sentence relief is warranted when post-trial delay caused an appellant to live as a registered sex offender longer than he would have if he had received his right to timely appellate review. *See Szymczyk*, 64 M.J. 179 (setting aside an appellant's sentence to three months of confinement and affirming only his dismissal where service court decision setting aside the offense requiring registration was issued more than six years after his court-martial). In contrast, this court found no additional sentence relief was appropriate or warranted where the appellant was subjected to sex-offender registration for 18 months longer than he would have been if the convening authority had modified the findings in a timely manner when the case was remanded. *Preciado*, 67 M.J. at 564. In that case, this court noted the appellant remained convicted of a serious sexual, though non-registration eligible, offense. *Id.*

Here, Appellant has been subject to sex-offender registration requirements since being released from confinement in April 2011. Unlike the accused in *Preciado*, he is no longer convicted of a serious sexual offense. Under the totality of the circumstances of this case, which includes the action we have already taken on Appellant's sentence based on our disapproval of the forcible sodomy charge, we conclude that additional sentence relief is warranted.[8] We, therefore, approve only so much of the sentence as provides for confinement for three months and reduction to E-3.

---

[8] We find dismissal of the remaining charges with or without prejudice would be an inappropriate and unreasonable windfall for Appellant. *See Moreno*, 63 M.J. at 143 ("Dismissal would be a consideration if the delay either impaired [the appellant's] ability to defend against the charge at a rehearing or resulted in some other evidentiary prejudice.").

In our view, this constitutes reasonable and meaningful sentence relief for the excessive post-trial delay. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 386 (C.A.A.F. 2006). Appellant's adjudged reduction to E-1 took effect 14 days after the sentence was adjudged. *See* Article 57(a)(1)(A), UCMJ, 10 U.S.C. § 857(a)(1)(A). Our action in his case has now restored the lost pay grades up to E-3.[9]

*Conclusion*

Charge III and its specification are dismissed. The findings of guilty as to Charge I and its two specifications are affirmed. As so modified, the findings are correct in law and fact.

We affirm only so much of the sentence as provides for 3 months confinement and reduction to the grade of E-3. All rights, privileges, and property of which Appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision are ordered restored. *See* Articles 58b(c) and 75(a), UCMJ, 10 U.S.C. §§ 858b(c), 875(a).

The findings, as modified, and the sentence, as reassessed and modified, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings, as modified, and the sentence, as reassessed and modified, are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[9] Because he was also sentenced to a bad-conduct discharge and confinement for six months, Appellant forfeited all his pay and allowances during his period in confinement. *See* Article 58b, UCMJ, 10 U.S.C. § 858b. Because we have disapproved the bad-conduct discharge as part of our sentence reassessment, Appellant is no longer subject to that forfeiture. *Id.*

ACM 37847 (rem)