# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JACOB A. DICKERSON**
**United States Army, Appellant**

ARMY 20220118

Headquarters, Fort Bragg
Gregory B. Batdorff and Stephan N. Nolten, Military Judges
Lieutenant Colonel Megan Wakefield, Acting Staff Judge Advocate
(pretrial and post-trial)
Colonel Susan K. McConnell, Staff Judge Advocate (post-trial)

For Appellant: Captain Patrick R. McHenry, JA (argued); Colonel Phillip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Devin V. Vickers, JA (on brief); Colonel Phillip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Major Devin V. Vickers, JA (on reply brief).

For Appellee: Captain Andrew T. Bobowski, JA (argued); Colonel Christopher B. Burgess, JA; Lieutenant Colonel Kalin P. Schlueter, JA; Major Chase C. Cleveland, JA (on brief).

20 March 2025

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MORRIS, Judge:

This case arises out of the conviction of appellant, in accordance with his pleas, of one specification of wrongful use of oxycodone, a Schedule II controlled substance, and one specification of dereliction of duty for failing to perform his duties as a military police officer, in violation of Articles 112a and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 892 (2019) [UCMJ]. The military judge sentenced appellant to seventy-five days of confinement and a bad-conduct discharge. The convening authority took no action on the findings and sentence.

Appellant raised two assignments of error: whether the evidence for the charge of dereliction of duty is legally and factually sufficient where the duty was not stated and required appellant to self-incriminate to comply; and whether Fort Bragg's flagrant post-trial processing delay warrants relief as both unreasonable and unconstitutional. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant further alleged his sentence was irrationally severe, the plea agreement included a prohibited term to waive individual receipt of his record of trial, his trial defense counsel failed to represent his best interest in urging his acceptance of the plea agreement, and the dereliction of duty specification failed to specify the duty for which he was derelict.[1]

We do not find an adequate basis in law and fact to support appellant's plea to the dereliction of duty charge, therefore we conclude the military judge abused his discretion in accepting the guilty plea for that offense and set it aside. We further find appellant's trial defense attorneys were not ineffective for encouraging appellant to plead guilty to the dereliction charge. Finally, appellant is also entitled to relief for unreasonable and excessive post-trial delay, which violated both his due process rights and those afforded to him under Article 66, UCMJ. We provide relief in our decretal paragraph.

## BACKGROUND

Appellant offered to plead guilty to two charges stemming from one, approximately ninety-second, phone call to coordinate the purchase of oxycodone. At the time of the call, appellant was on duty as a military police officer and was tasked with the oversight of security at the Bragg Boulevard Gate at Fort Bragg, North Carolina. During his shift brief, appellant was ordered to report all illegal activity to dispatch. Following the completion of his shift, he purchased and used oxycodone, as coordinated during the on-shift phone call. The government subsequently charged appellant with one specification of wrongful distribution of oxycodone,[2] one specification of wrongful use of oxycodone, and one specification of dereliction of "his Military Police duties" by culpable inefficiency in "fail[ing] to perform his duties as a Military Police officer when he attempted to wrongfully coordinate a drug deal for Oxycodone while on duty, and by using a Military Police vehicle."

In accordance with Article 32, UCMJ, a preliminary hearing was conducted. The preliminary hearing officer recommended the government dismiss the dereliction charge for failure to state an offense, specifically because the

---

[1] As we provide relief based on appellant's assigned errors, these issues are moot.

[2] The distribution charge that was dismissed pursuant to the plea agreement was unrelated to the incidents for which appellant pleaded guilty.

specification did not state the "certain duty" that appellant had allegedly failed to perform, an element of the offense.[3] Despite the recommendation from the PHO, the Staff Judge Advocate (SJA) recommended the convening authority refer all preferred charges to a general court-martial, which the convening authority did.

Notwithstanding the concerns regarding the sufficiency of the dereliction of duty offense, appellant's counsel advised him to move quickly during plea negotiations. Using the dereliction offense as a bargaining chip, appellant's counsel negotiated a plea agreement that included dismissal of the wrongful distribution charge[4] and a reduced maximum sentence to confinement from six months to ninety days. A provision in the plea agreement preserved the agreement in the event a specification was amended, consolidated, or dismissed with appellant's consent for any reason.

At trial, during the providence inquiry, appellant confirmed that, "[w]hile [he] was on duty as a military police officer, [he] had a duty to report all crimes." He further said, "[w]hen [he] placed this call, [he] knew [he] was speaking to a drug dealer" and, that he was "using the time [he] should have been focused on security at the gate to focus on purchasing drugs." Appellant went on to say that he knew he "should have told dispatch or [his] leadership about [his] knowledge of these crimes, and believe[d] [he] failed as a military police officer by not doing so."

In follow-up to appellant's statements, the military judge sought to clarify the duty appellant was derelict in performing, beyond a general duty to report all criminal activity. The military judge asked specific questions about what appellant was doing when he made the call. Appellant stated he had been tasked with monitoring the gate from a parked vehicle and to be prepared to respond to individuals attempting to access the installation without authorization or to commotions at the gate. When asked how he had violated this duty, appellant responded, "I would say my, my attention wasn't fully on the gate at the time, Your Honor." Appellant agreed when the military judge followed up with "[s]o you were . . . a little bit distracted." The military judge said he believed appellant had "read a factual basis for two duties violated." "One, you're supposed to report illegal activity, right?" And, "two, you weren't focusing on your duties going through the gate, is that fair to say?" Appellant agreed with both. The military judge then

---

[3] A servicemember is derelict in the performance of duties, *inter alia*, wherein they "(a) . . . had certain duties; (b) [t]hat [they] knew or reasonably should have known of the duties; and (c) [t]hat [they were] through neglect or culpable inefficiency derelict in the performance of those duties." *Manual for Courts-Martial, United States* (2019 ed.) [MCM], pt. IV, ¶ 18.b.3.

[4] The plea agreement provided that prejudice attached to the dismissed wrongful distribution charge at the announcement of sentence.

revisited the definition of culpable inefficiency, advising appellant that it "is inefficiency for which there's no reasonable or just excuse." Appellant confirmed he did not have a reasonable or just excuse. After discussing the plea agreement, the military judge found appellant's plea of guilty was provident and accepted it. Appellant was sentenced the same day, 14 March 2022, and ordered into confinement.

Excessive delay plagued the post-trial processing of this case. Appellant requested the convening authority waive automatic forfeitures on 21 March 2022. The convening authority granted appellant's request on 6 April 2022, and this decision was forwarded to the military judge on 18 April 2022. After an unexplained five-month delay, the military judge entered judgment (EOJ) on 13 September 2022, 183 days past sentencing.

Despite appellant's 23 February 2023 request for speedy post-trial processing pursuant to *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), authentication of his 114-page record of trial was not completed until 17 June 2023—more than 460 days after his guilty plea and 114 days after his *Moreno* demand. The court reporter certified the record three days later. Over a month after that, the unit mailed the record to this court on 1 August 2023. We received it on 7 August 2023, more than 500 days after sentencing.

The record included a memorandum from the chief of justice (COJ), who sought to explain the post-trial situation. These explanations broadly fell into four categories: (1) the operational impacts of a XVIII Airborne Corps European rotation from February to October 2022, which required the then-COJ to fill other supervisory positions, reducing oversight of post-trial processing; (2) a shortage of experienced court reporters coupled with a large backlog of courts-martial; (3) difficulties with contract transcription services; and (4) transition in leadership in the Office of the Staff Judge Advocate (OSJA) between 17 June and 17 July 2023, delaying certification of the record of trial.[5] According to the memorandum, these shortfalls resulted in "no transcription of the record of trial in *US v. Dickerson* between February 2022 and October 2022," despite the record being sent to a contractor on 2 December 2022 and returned three days later.[6]

---

[5] However, the initial certification by the OSJA was completed on 30 May 2023 by a trial counsel, not by the incoming or outgoing COJ or anyone else in the OSJA leadership.

[6] The COJ noted that "Because the contractor [did] not have the [recording system used by the court-martial] and the court-reporter was not present for the trial, the review took additional time." There is no other discussion, however, of the quality

(continued . . .)

4

In his *Grostefon* matters, appellant averred his trial defense counsel had not received a copy of the record of trial from his court-martial as referenced in the plea agreement and discussed with the military judge. On 7 February 2025, we ordered the Staff Judge Advocate (SJA) for the XVIII Airborne Corps to submit an affidavit to the court, stating whether the government had provided a copy of the record of trial to appellant's trial defense counsel. The SJA, on 11 February 2025, responded that appellant's trial defense counsel had been served with a copy of the record only the day prior almost thirty-five months after appellant's court-martial, more than nineteen months after the record was certified as complete, and only after our order seeking clarification whether the government had forwarded the record of trial to appellant's trial defense counsel as required by appellant's plea agreement.

## LAW AND DISCUSSION

### A. Acceptance of Appellant's Plea

Courts "review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plca de novo." *United States v. Kim*, 83 M.J. 235, 238 (C.A.A.F. 2023) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "During a guilty plea, the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *Id.* (internal citations omitted). "A military judge abuses his or her discretion by failing to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference or if his or her ruling is based on an erroneous view of the law." *Id.* (internal citations and quotations omitted). Given the relatively undeveloped nature of the record at a guilty plea, "broad discretion" is afforded to the military judge. *Id.* Because of this, the guilty plea will stand unless "the record as a whole show[s] a substantial basis in law and fact for questioning the guilty plea." *Id.*

"A guilty plea is an admission of all the elements of a formal criminal charge." *Id.* For a guilty plea to be truly voluntary, appellant must possess "an understanding of the law in relation to the facts." *Id.* (citing *United States v. Care*, 18 C.M.A. 535, 539 (1969)). "A providence inquiry into a guilty plea must establish . . . not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea." *United States v. Garcia*, 44 M.J. 496, 497-98 (C.A.A.F. 1996). "[M]ere conclusions

---

( . . .continued)
of transcription service provide by the contractor or what additional work besides review, if any, was necessary. "Staff judge advocates who decline to memorialize delays with thorough, credible, and relevant specificity do so at the peril of their units' cases on appeal." *United States v. Winfield*, 83 M.J. 662, 665 (Army Ct. Crim. App. 2023).

of law recited by an accused . . . are insufficient to provide a factual basis for a guilty plea." *United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002) (internal cites omitted).

The UCMJ offense of dereliction of duty for which appellant was charged requires proof of three elements: (1) the accused had certain duties; (2) the accused knew or reasonably should have known of the duties; and (3) the accused was, through culpable inefficiency, derelict in the performance of those duties." *MCM*, pt. IV, ¶ 18.b.3. "When a charge against a servicemember may implicate both criminal and constitutionally protected conduct, the distinction between what is permitted and what is prohibited constitutes a matter of critical significance." *United States v. Hartman*, 69 M.J. 467, 468 (C.A.A.F. 2011) (internal quotations and citations omitted). "The colloquy between the military judge and an accused must contain an appropriate discussion and acknowledgement on the part of the accused of the critical distinction between permissible and prohibited behavior." *Id.*

"Servicemembers are protected from compulsory self-incrimination by the fifth amendment to the Constitution of the United States and Article 31, UCMJ, 10 U.S.C. § 831." *United States v. Heyward*, 22 M.J. 35, 37 (C.M.A. 1986). "In order to invoke the privilege it is necessary to show that the compelled disclosures will themselves confront the claimant with 'substantial hazards of self-incrimination.'" *California v. Byers*, 402 U.S. 424, 429 (1971). "In the absence of a dialogue employing lay terminology to establish an understanding by the accused as to the relationship between the supplemental questions and the issue of criminality, we cannot view [an appellant's] plea as provident." *Kim*, 83 M.J. at 238 (internal citations and quotations omitted) (alterations in original).

The military judge erred in accepting appellant's plea for two interconnected reasons. First, he failed to discuss with appellant his protections against self-incrimination under the Fifth Amendment. Second, he failed to establish a sufficient factual basis demonstrating appellant failed to carry out a *specific* non-constitutionally protected duty.

The military judge abused his discretion when he accepted appellant's plea without advising appellant he did not have a duty to incriminate himself by reporting his phone call seeking oxycodone. During the providence inquiry, appellant expressed his belief – uncorrected by the military judge – that he had a duty to report his "crimes" to dispatch or his leadership and that he failed as a military police officer by not doing so. Our superior court has emphasized in multiple opinions the fundamental problem when a "military judge fail[s] to ask the appellant whether he understood the relationship between certain sections of the colloquy and the distinction between constitutionally protected behavior and criminal conduct." *Id.* (citing *Hartman*, 69 M.J. at 469).

Unlike the reporting requirement in *Heyward*, where the requirement compelled one only to report the illegal acts of others, a purported duty to report one's own illegal act obviously runs afoul of the Fifth Amendment. *Cf. Heyward*, 22 M.J. at 37. A compelled disclosure of this type invokes the privilege, because it confronts the claimant with "substantial hazards of self-incrimination." *Byers*, 402 U.S. at 429.

The government now urges in brief that "the basis for appellant's dereliction charge was the phone call to purchase drugs while on-duty in the government vehicle, not his failure to report himself." The record tells us otherwise. First, the stipulation of fact stated appellant was ordered to "report all illegal activity to dispatch." Then, during the colloquy, the military judge specifically clarified that appellant had read the factual basis for "two duties violated." The first of those duties as described by the military judge was to "report illegal activity," language that came directly from the stipulation and appellant. At no time did the military judge inform appellant that his Fifth Amendment privilege against self-incrimination meant that he did not have a duty to report his own criminal activity. Of course, this led to another basic problem with the inquiry, where the military judge failed to assess whether appellant understood the critical distinction between permissible and prohibited behavior. To be perfectly clear, we do not hold it was permissible for appellant to make a phone call to purchase a drug he had no authority to consume. Instead, we hold that the purported duty he was prosecuted for culpably neglecting to perform was inconsistent with the Constitution.

Having turned aside appellant's "general duty" as a potential basis for affirming his Article 92, UCMJ, conviction, we turn to the specific duties appellant was tasked with on the date of the pertinent charged misconduct. In light of the fact that we are left with little more than one ninety-second phone call where appellant was "a little bit distracted," we find there was not an adequate factual basis to support the guilty plea. As aptly pointed out by appellant's counsel, the colloquy fails to provide any facts demonstrating appellant's failure in his oversight duties at the gate.

This case is not at all like *United States v. Craion*, 64 M.J. 531 (Army Ct. Crim. App. 2006), where appellant took time away from his duties to sexually assault a child. In that case, this court found even a short departure from duty to commit a crime to be inherently unreasonable and derelict. *Id.* at 536. The record in this case does not establish any such departure from duty, nor should the activity of making a phone call while on-duty, for an illegal purpose or otherwise, be likened to sexual assault at the workplace. Outside of appellant's conclusory statements to the military judge, there is no factual basis for us to find that appellant was distracted to the point of being unable to perform his specific military duties. Even recognizing the broad discretion given to a military judge in obtaining a factual basis to support the plea, in this case, the facts in the record simply do not get us there.

Further, even if we found the phone call was enough, it is impossible to know what weight the military judge gave the duty to report appellant's own crime, since it is not clear from the record that the military judge identified the error.[7] Therefore, we conclude that the military judge abused his discretion in accepting appellant's plea of guilty to dereliction of duty.

*B. Post-Trial Delay*

"[T]he procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucy*, 469 U.S. 387, 393 (1985). "[A]n appeal that is inordinately delayed is as much a 'meaningless ritual' as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceedings." *Winfield*, 83 M.J. at 665 (internal citations omitted) (corrections in original).

This court reviews claims of excessive post-trial delay de novo, *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)), using our authorities under the Due Process Clause of the Fifth Amendment and under Article 66(d)(2). *Winfield*, 83 M.J. at 664. Post-trial processing is presumed to have occurred at a reasonable pace wherein the convening authority takes initial post-trial action within 120 days of trial, appellate docketing occurs within the next 30 days, and appellate review concludes within eighteen months of docketing. *Moreno*, 63 M.J. at 142.

Our superior court adopted the four factors from *Barker v. Wingo*, to provide a framework for analyzing post-trial delay within the context of an alleged due process violation: "(1) length of delay; (2) reasons for the delay; (3) appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Winfield*, 83 M.J. at 665 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). "No single factor is required to find that post-trial delay constitutes a due process violation." *Id.* (citing *United States v. Toohey (Toohey II)*, 63 M.J. 353, 361 (C.A.A.F. 2006) (quoting *Moreno*, 63 M.J. at 135) (alterations omitted).

While some cases "justifiably take longer" to prepare for appellate review, "[o]thers should take significantly less time." *Winfield*, 83 M.J at 665. Appellant's case clearly falls into the latter category. Five hundred and five days to process, transcribe, and transmit appellant's 114-page record to this court is excessive. Neither the facts and circumstances of this case, nor the complexity of the record justify the delay. There were no sealed exhibits, a minimal number of admitted prosecution and defense exhibits, and only *four* appellate exhibits. The fact that a

---

[7] *Cf. United States v. Bailey*, 84 M.J. 754, 757 (Army Ct. Crim. App. 2024) (noting the use of special findings to establish the "factual basis for each element of each offense" to which appellant was found guilty).

contractor returned the transcript to the legal office within three days, despite lacking access to the same transcription service utilized by the Fort Bragg court reporters, highlights this point.

The stated justification for the delay also weighs in favor of appellant. We reviewed the memorandum for record prepared by the COJ, but we do not find the explanation for the delay persuasive. While a unit deployment or rotation into theater could serve as a compelling justification for post-trial delay in some instances, we find the unit operational requirements as articulated by the COJ do not alleviate any responsibility in appellant's case. *E.g., United States v. Govindasamy,* ARMY 20121038, 2015 CCA LEXIS 568, at *10 (Army Ct. Crim. App. 16 Dec. 2015) (mem. op) (finding the second *Barker* factor weighed in appellant's favor when the delay was attributed to "court reporter shortages, a high workload, and a deployment of the [corps] headquarters."); *see also United States v. Abdullah,* 85 M.J. 501, 2024 CCA LEXIS 479, at *50 (Army Ct. Crim. App. 5 Nov. 2024) (Penland, J., dissenting). While leadership rotations in the OSJA "through operational deployments to Europe" from February to October 2022 required the COJ to assume additional responsibilities, her memorandum is silent as to any other shortfalls the office experienced or work that had to be prioritized. Moreover, these operational demands ended in October 2022—a month before *any* work began on appellant's case and eight months before review was complete.

Furthermore, we do not find the personnel shortages identified by the COJ to be persuasive. We must again turn to the fact that it took 463 days to compile and certify appellant's record of trial—a record which was at least partially transcribed by a contractor in three days and returned to the OSJA in early December 2022. While we acknowledge there was limited court reporter availability, and those court reporters were also engaged in presently occurring courts-martial, the total lack of action in appellant's case from February to November 2022 is inexcusable.[8]

We are also not convinced that changes in OSJA leadership in the summer of 2023 provide a basis for excludable delay. The record of trial was certified by a trial counsel, a captain, in late May. At that point in time, the only remaining actions left for the OSJA were to transmit the record to the judge for authentication, to the court reporter for certification, and finally, to this court. Yet, it still took over sixty days for these simple actions to be completed.

Lastly, the memorandum fails to explain additional breaks in time during which appellant's case stood by the wayside, including the almost two weeks it took

---

[8] When considering memorialized justifications for delay, the Court of Appeals for the Armed Forces has held that "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga,* 70 M.J. 51, 57 (C.A.A.F. 2011).

for the convening authority action to be forwarded to the military judge, the five months it took for the military judge to enter judgment, and the forty-five days between authentication and the record being placed in the mail.[9] When aggregated, these 205 days account for a significant portion of the delay in processing appellant's court-martial. Left with no explanation as to why these delays occurred as they did, we must weigh them against the government.

Appellant asserted his right to speedy post-trial processing on 23 February 2023—346 days after the conclusion of his court-martial. The third *Barker* factor thus ways in favor of appellant.[10]

The fourth *Barker* factor, prejudice, weighs against appellant. In assessing for prejudice, we consider three narrow sub-factors: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno*, 63 M.J. at 138-39 (internal citations omitted). Given the amount of confinement adjudged for appellant's Article 112a, UMCJ, violation, appellant would have almost certainly been released from confinement prior to completion of appellate review, with even the timeliest receipt of his record by this court. He, therefore, did not suffer any oppressive incarceration as a result of the government's abysmal post-trial processing of his case. *E.g.*, *Toohey*, 63 M.J. at 361. Appellant has also not pointed to any unique anxiety or fear caused by this appeal, nor do we find that his grounds for appeal were limited by the delay. As such, appellant does not meet the narrow framework for prejudice as articulated in *Moreno*.

Absent prejudice, a due process violation will still be found if "in balancing the other three [*Barker*] factors, that the [post-trial] delay was so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Anderson*, 82 M.J. 82, 87 (C.A.A.F. 2022).

In this case, the sum impact of the other three *Barker* factors cannot be tolerated. The gross amount of delay, for a short and simple record, is inexcusable.

---

[9] *Cf. Abdullah*, 85 M.J. at *13-14 (Army Ct. Crim. App. 5 Nov. 2024) (highlighting government failures in completing "ministerial task[s]" such as drafting documents or in transmitting documents or the record from one party to another).

[10] We note it took an additional 165 days for his record to arrive to this court, after appellant's *Moreno* demand. We also note that the COJ memorandum does not specifically address, or even acknowledge, appellant's demand for speedy post-trial processing.

Appellant had a cognizable legal claim that would have resulted in appellate relief. Put plainly, justice delayed is justice denied. Appellant should not have been forced to carry the weight of a flawed conviction for anywhere near this amount of time. The government's attempts to explain the delay are either generic or unpersuasive. Appellant's request for speedy post-trial went unanswered. Lastly, and though not controlling in our analysis, it took well over 1,000 days for the United States government to provide a record of trial to defense counsel, which R.C.M. 1112 and arguably the plea agreement required them to do. Given all that transpired – and all that did not – after the trial judge adjourned the court-martial, we have grave concerns that tolerating this delay would adversely impact the average citizen's view of military justice. As such, we find appellant's right to due process under the Fifth Amendment was violated.

Having found a due process violation, we must independently assess the totality of the circumstances to determine whether the government has proven this violation harmless beyond a reasonable doubt, a question we review de novo. *United States v. Ashby*, 68 M.J. 108, 125 (C.A.A.F. 2009). "Determining whether a due process error was harmless beyond a reasonable doubt necessarily involves analyzing the case for 'prejudice,' but that analysis for 'prejudice' is separate and distinct from the consideration of prejudice as one of the four *Barker* factors." *Id.* Instead, it must "determine other prejudicial impact" created by delay. *United States v. Bush*, 68 M.J. 96, 102 (C.A.A.F. 2009).

Appellee does not explain how this violation was harmless beyond a reasonable doubt, other than alluding to past cases where longer periods of delay were found harmless beyond a reasonable doubt. We do not find this argument compelling. Unlike prior cases, appellant here asserted his rights to speedy post-trial processing, to little avail, and his assigned error was meritorious. *Cf. id.* at 123.

Outside of appellant's due process protections, we find additional basis to grant appellant relief under Article 66(d)(2), UCMJ, which authorizes us to provide appropriate relief if the accused demonstrates excessive delay in the processing of his court-martial after the judgment was entered into the record.[11] A finding of prejudice to appellant is not required under our Article 66, UCMJ, analysis. *United States v. Tardiff*, 57 M.J. 219, 224 (C.A.A.F. 2002). Instead, in determining whether relief is appropriate, this court considers the totality of the circumstances "balancing the interplay between factors such as chronology, complexity, and unavailability, as well as the unit's memorialized justifications for any delay." *United States v. Rouson*, ARMY 20220319, 2023 CCA LEXIS 508, at *4 (Army Ct. Crim. App. 1

---

[11] Article 66(d)(2), UCMJ, states "the Court may provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record."

Dec. 2023) (summ. disp.) (citing *Winfield*, 83 M.J. at 666). When considering whether relief is "appropriate," this court has also considered the nature of the conduct for which appellant was found guilty. *E.g.*, *Winfield*, 83 M.J. at 666.

Almost eleven months expired between the issuance of the EOJ and our receipt of the record containing 114-pages of transcript. This timeframe is certainly excessive for a record of that nature and in no way demonstrates the efficient administration of military justice. We reviewed the memorandum for record prepared by the COJ, but we do not find the explanation for the delay persuasive, especially considering it took over fifteen months to compile and certify the record of trial—a record which was at least partially transcribed by a contractor in *three days* and returned to the XVIII Airborne Corps OSJA in early December 2022.

Appellant requests that we "set[] aside the . . . bad-conduct discharge." We agree that appellant's request is an appropriate remedy given the violation of his rights under both the Fifth Amendment and Article 66, UCMJ, which jointly and severally warrant such relief.

Appellant did not engage in any violent crimes, nor is there any evidence of attempts to evade arrest or to interfere with the military justice process. *Cf. id.* Instead, appellant wrongfully used a controlled substance. Moreover, his record was either far shorter than recent post-trial cases brought before this court, *id.*, or the delay was far greater. *Cf. Abdullah*, 85 M.J. at *14. Affirming a punishment of seventy-five days of confinement, the sentence imposed by the military judge and the minimum period of confinement authorized by the plea agreement for the Article 112a, UCMJ, conviction more than adequately reflects the criminality of appellant's conduct while acknowledging the woefully inefficient post-trial processing of appellant's case.

*C. Execution of Appellant's Plea Agreement*

Though we ultimately conclude no relief is warranted specifically based on the government's abject failure to provide appellant's trial defense counsel with a copy of his record of trial, *as they agreed to*, we believe this failure still merits discussion.[12]

Appellant agreed to waive his right to personally receive a copy of his certified record of trial. Rule for Courts-Martial (R.C.M.)1112(e)(1) states "a court reporter shall . . . provide a copy of the certified record of trial free of charge to . . .

---

[12] We also note that, according to appellant's trial defense counsel, this term in the plea agreement was "non-negotiable for the [government]," and had appellant not acquiesced, there was a significant risk that "the OSJA would not recommend approval of the deal to the convening authority."

[t]he accused." Having waived his right to personally receive the record under R.C.M. 1112(e)(1), appellant instead requested "[a]s contemplated by R.C.M. 1112(e)(2), . . . that [his] record of trial be forwarded to [his trial] defense counsel only." When an appellant does not personally receive his record of trial, R.C.M. 1112(e)(2) mandates a "copy of the record shall be forwarded to [appellant's] counsel" if appellant made such a request "on the record at the court-martial or in writing." In this case, appellant made a request on the record and in writing via his plea agreement.

Because the government eventually provided a copy of the record of trial to appellant's trial defense counsel, we need not determine whether appellant's written request, encapsulated in his plea agreement, also further constituted a contractual term or condition the government was required to fulfill under R.C.M. 705.[13] Whether it was only a requirement under R.C.M. 1112(e)(2), or also a potential contractual "term or condition" under R.C.M. 705, the government failed for almost thirty-five months after adjournment, and over nineteen months after certification, to provide a copy of the record of trial to appellant's trial defense counsel. Even this happened only after we intervened.

In any event, this case in no way reflects the justice required by the Constitution or the Uniform Code of Military Justice.

## CONCLUSION

On consideration of the entire record, the findings of guilty to Specification 2 of Charge I and Charge I are AFFIRMED. The findings of guilty to the Specification of Charge II and Charge II are SET ASIDE, and that specification and charge are DISMISSED. Only so much of the sentence as provides for 75 days of confinement is AFFIRMED. The bad-conduct discharge is SET ASIDE.

Judge PENLAND and Judge COOPER concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court

---

[13] Rule for Courts-Martial 705 generally governs the nature, scope, formation, and execution of plea agreements. "Any other term or condition that is not contrary to or inconsistent with [R.C.M. 705]" is permissible, R.C.M. 705(c)(2)(F) (2019 ed.), and the agreement must "contain a complete and accurate statement of any . . . agreed terms or conditions." R.C.M. 705(e)(2) discussion.